United States Court of Appeals,

Eleventh Circuit.

No. 96-6143.

GAY LESBIAN BISEXUAL ALLIANCE, Plaintiff-Appellee,

v.

Bill PRYOR in his official capacity as Attorney General, of the State of Alabama, Defendant-Appellant,

Frederick P. Whiddon, in his official capacity as President of the University of South Alabama;  Dale T. Adams, in his official capacity as Dean of Students of the University of South Alabama, Defendants.

April 29, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV-93-T-1178-N), Myron H. Thompson, Chief Judge.

Before DUBINA and BLACK, Circuit Judges, and O'KELLEY[*], Senior District Judge.

DUBINA, Circuit Judge:

Appellant Attorney General Bill Pryor[1] ("the Attorney General") appeals the district court's judgment that ALA.CODE, § 16-1-28, (1995), violates the First Amendment to the United States Constitution both facially and as applied to Appellee Gay and Lesbian Bisexual Alliance ("GLBA"). *Gay Lesbian Bisexual Alliance v. Sessions,* 917 F.Supp. 1548 (M.D.Ala.1996). Based upon our review of the record, we affirm the judgment of the district court.

I. STATEMENT OF THE CASE

A. *Background*

---

[*]Honorable William C. O'Kelley, Senior U.S. District Judge for the Northern District of Georgia, sitting by designation.

[1]Bill Pryor became Alabama's Attorney General during the course of this appeal and, by operation of law, is substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

Ala.Code § 16-1-28 provides:

> (a) No public funds or public facilities shall be used by any college or university to, directly or indirectly, sanction, recognize, or support the activities or existence of any organization or group that fosters or promotes a lifestyle or actions prohibited by the sodomy and sexual misconduct laws of §§ 13A-6-63 to 13A-6-65, inclusive.

> (b) No organization or group that receives public funds or uses public facilities, directly or indirectly, at any college or university shall permit or encourage its members or encourage other persons to engage in any such unlawful acts or provide information or materials that explain how such acts may be engaged in or performed.

> (c) This section shall not be construed to be a prior restraint of the first amendment protected speech. It shall not apply to any organization or group whose activities are limited solely to the political advocacy of a change in the sodomy and sexual misconduct laws of this state.

The statutes referenced in part (a) criminalize sodomy or "deviate sexual intercourse," which Alabama law defines as "[a]ny act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another." ALA.CODE § 13A-6-60(2) (1994).

The University of South Alabama ("USA") encourages a wide variety of student activities on campus and has an established procedure for the formation and registration of student organizations. USA has over 100 registered student organizations. These organizations are eligible for certain benefits, including use of campus meeting rooms, on-campus banking services, and funding from the USA Student Government Association ("SGA"). GLBA is an officially recognized student organization whose purpose, according to its constitution, is

> to provide a foundation for unification for homosexual and nonhomosexual people of the student population, in order to draw support to further our efforts in educating all members of the university community on the fears and dangers of

homophobia and to provide a support system for the University of South Alabama's homosexual students.

*Gay Lesbian Bisexual Alliance,* 917 F.Supp. at 1551 n. 18.

This case arises from two incidents. First, the district court found that USA effectively denied on-campus banking privileges to GLBA. Following the passage of § 16-1-28, GLBA requested an on-campus bank account to avoid commercial banking fees. Dean Adams of USA advised GLBA that in light of § 16-1-28, USA could freeze GLBA funds placed in an on-campus account. GLBA therefore opened an account off-campus with a commercial bank.

Second, USA denied funding to GLBA based on § 16-1-28. The district court based this conclusion on three events. In the fall of 1992, GLBA requested funds to purchase posters publicizing "World AIDS Day" activities. Dean Adams refused to fund GLBA until he received an opinion from the Attorney General on § 16-1-28's application. In an effort to accommodate GLBA without violating § 16-1-28, Dean Adams instructed the SGA to buy the World AIDS Day posters. In the winter of 1993, GLBA requested funds to bring a guest speaker to campus. Dean Adams instructed the SGA to table the request because USA could not fund GLBA until it received an opinion from the Attorney General interpreting § 16-1-28. In the spring of 1993, GLBA again requested funds for a speaker. This time the SGA approved the request. However, Dean Adams refused to approve final payment of this money. In July 1993, the Attorney General issued a letter opinion stating that GLBA could not receive funds. The Attorney General's opinion did not specify how or why GLBA violated § 16-1-28. It is clear from the record that USA officials made efforts to accommodate GLBA without violating § 16-

1-28. However, it is also clear that USA officials felt compelled, by virtue of § 16-1-28, to deny funding to GLBA on the three occasions mentioned above.

B. *Procedural History*

GLBA filed suit against the Attorney General and two USA officials alleging that § 16-1-28, on its face and as applied to it, constituted impermissible viewpoint discrimination in violation of the First Amendment. GLBA also raised Equal Protection Clause and First Amendment vagueness challenges to the statute. The parties submitted the case for final resolution on a joint written record, supplemented by briefs and oral argument. The district court held that § 16-1-28 violated the First Amendment both on its face and as applied to GLBA. The district court did not reach the equal protection or vagueness claims. Only the Attorney General appealed.

## II. ISSUES

A. Whether the district court's factual findings are clearly erroneous.

B. Whether § 16-1-28 violates the First Amendment as applied to GLBA.

C. Whether § 16-1-28 violates the First Amendment on its face.

## III. STANDARDS OF REVIEW

The constitutionality of a statute is a question of law subject to *de novo* review. *United States v. Harden,* 37 F.3d 595, 602 (11th Cir.1994). We review the district court's underlying factual findings for clear error. FED.R.CIV.P. 52(a); *Anderson v. Blue Cross/Blue Shield of Ala.,* 907 F.2d 1072, 1075 (11th Cir.1990).

## IV. DISCUSSION

A. *The District Court's Factual Findings*

The evidence is undisputed because the parties submitted this case on a joint written record. Nevertheless, the Attorney General argues that the district court mischaracterized some of the evidence. If evidence is capable of different reasonable interpretations, however, findings based on one of them are not clearly erroneous. *L & C Marine Transport, Ltd. v. Ward,* 755 F.2d 1457, 1461 (11th Cir.1985). We have examined the record and conclude that, on balance, the district court's findings are not clearly erroneous. However, one of the district court's findings requires some discussion.

The district court found that USA engaged in an improper investigation into the personal lives of GLBA group members. In July 1993, the Attorney General released a letter opinion regarding the application of § 16-1-28 to GLBA. The Attorney General concluded, without analysis or explanation, that GLBA could not receive funds from the SGA. Because the Attorney General provided no guidance on the meaning of "fostering" or "promoting," USA established a fact-finding committee to determine if GLBA violated § 16-1-28 by fostering or promoting actions prohibited by the sodomy or sexual misconduct laws. The district court characterized this action as "intrusive and highly personal." *Gay Lesbian Bisexual Alliance,* 917 F.Supp. at 1552.

The Attorney General correctly points out that the committee actually never began an investigation due to GLBA's filing of this lawsuit. The district court therefore mischaracterized the

fact-finding committee. The committee could not have been "intrusive and highly personal" because it had yet to begin its work. We conclude that this finding of the district court is clearly erroneous but we do not consider the proposed work of the fact-finding committee material to this appeal. Despite our disagreement with the district court on this point, the remaining factual findings are based on a reasonable interpretation of the facts and are not clearly erroneous.

B. *Whether § 16-1-28 Violates The First Amendment As Applied To GLBA.*

   1. *§ 16-1-28 Implicates First Amendment Protected Speech*

Appellant argues that the expression affected by § 16-1-28 is not constitutionally protected speech because the statute only outlaws speech advocating violation of the sodomy or sexual misconduct laws. We disagree. It is well-established that the First Amendment protects advocacy to violate a law. *Brandenburg v. Ohio,* 395 U.S. 444, 448-49, 89 S.Ct. 1827, 1830-31, 23 L.Ed.2d 430 (1969). That protection is limited in one important respect: The First Amendment does not "permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to *inciting or producing imminent lawless action and is likely to incite or produce such action.*" *Id.* at 447, 89 S.Ct. at 1829 (emphasis added); *see also Healy v. James,* 408 U.S. 169, 188-89, 92 S.Ct. 2338, 2350, 33 L.Ed.2d 266 (1972); *Noto v. United States,* 367 U.S. 290, 297-98, 81 S.Ct. 1517, 1520-21, 6 L.Ed.2d 836 (1961).

The Attorney General argues that we should interpret § 16-1-28 to fit within *Brandenburg* 's narrow exception to the general

rule that advocacy to violate the law is protected speech. According to the Attorney General, speech that falls within *Brandenburg* 's incitement of imminent lawless action exception is not constitutionally protected. We have serious doubts about this argument in light of *R.A.V. v. City of St. Paul, Minnesota,* 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). *R.A.V.* involved the constitutionality of St. Paul's hate speech ordinance.[2] In striking down the statute, Justice Scalia, writing for the Court, rejected the notion that expressive activity could be devoid of constitutional protection.

> We have sometimes said that these categories of expression [obscenity, defamation, fighting words] are not within the area of constitutionally protected speech or that the protection of the First Amendment does not extend to them. Such statements must be taken in context ... What they mean is that these areas of speech can, consistently with the First Amendment, be regulated *because of their constitutionally proscribable content* (obscenity, defamation, etc.)—not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content.

*Id.* at 383-84, 112 S.Ct. at 2543. Thus, incitement of imminent lawless action is not bereft of constitutional protection and regulation of such speech must be related to its constitutionally proscribable content. Nevertheless, we need not consider whether

---

[2]The St. Paul Bias-Motivated Crime Ordinance provided:

> Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.

ST. PAUL, MINN., LEGIS.CODE § 292.02 (1990).

§ 16-1-28 appropriately regulates speech falling within the *Brandenburg* exception, as the Attorney General suggests, because the statute is not capable of such a narrow interpretation.

The Attorney General's proposed construction of § 16-1-28 is an insupportable interpretation of the statute. The key language from part (a) of the statute prohibits funding any group which "fosters or promotes a lifestyle or actions prohibited by the sodomy and sexual misconduct laws." The plain meaning of this language is broad. The legislature used similarly broad language in part (b), which prohibits funding any group that "encourage[s] its members or encourage[s] other persons to engage in [sodomy] or provide information or materials that explain how [sodomy] may be engaged in or performed." It would be difficult indeed to interpret this language as applying only to incitement of imminent lawless action as the Attorney General suggests. The speech at issue clearly implicates the First Amendment. Therefore, we consider whether Alabama may enforce § 16-1-28 consistent with constitutional principles.

2. *§ 16-1-28 Constitutes Viewpoint Discrimination*

The government's power to restrict First Amendment activities depends on "the nature of the relevant forum." *Cornelius v. NAACP Legal Defense & Educ. Fund,* 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985); *Ethredge v. Hail,* 56 F.3d 1324, 1326-27 (11th Cir.1995). The Supreme Court has recognized three types of forums: nonpublic forums, traditional public forums, and limited public forums. *See, e.g., Perry Educ. Assoc. v. Perry Local Educators' Assoc.,* 460 U.S. 37, 45-46, 103 S.Ct. 948, 954-55,

74 L.Ed.2d 794 (1983); *Searcey v. Harris,* 888 F.2d 1314, 1318-19 (11th Cir.1989). Nonpublic forums are areas that are not traditionally public forums and that the government has not opened for public use. *Perry,* 460 U.S. at 46, 103 S.Ct. at 955-56. For example, military bases and prisons are nonpublic forums. The government's power to regulate speech is strongest in these areas. *M.N.C. of Hinesville v. U.S. Dept. of Defense,* 791 F.2d 1466, 1472 (11th Cir.1986). Traditional public forums are areas such as streets and parks. *Hague v. CIO,* 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939). The government's power to limit speech is weakest in these areas. *Perry,* 460 U.S. at 45, 103 S.Ct. at 954-55. Limited public forums are those areas that the government has created for use by the public as places for expressive activity. *Perry,* 460 U.S. at 45, 103 S.Ct. at 954-55. Although the government is not required to create such forums, once it does so the Constitution constrains its power to regulate speech within the forum. *M.N.C. of Hinesville,* 791 F.2d at 1472.

The Supreme Court's recent decision in *Rosenberger v. Rector & Visitors of the Univ. of Virginia,* --- U.S. ----, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995), makes clear that USA's system for funding student groups created a limited public forum. *Rosenberger* involved the University of Virginia's ("UVA") refusal to fund a student newspaper with a Christian viewpoint. UVA's procedure for funding student groups was very much like the procedure in place at USA in this case. UVA allowed certain qualified student organizations to submit bills from outside contractors to the Student Activities Fund ("SAF"). The purpose of the SAF was to

support extracurricular activities related to the educational purpose of UVA. The Student Council disbursed the funds subject to review by a UVA faculty committee. UVA prohibited disbursements to groups which "primarily promote[ ] or manifest[ ] a particular belie[f] in or about a deity or an ultimate reality." *Rosenberger,* --- U.S. at ---- - ----, 115 S.Ct. at 2514-15 (citations omitted). Pursuant to this policy, UVA refused funding to a qualified student organization which published a newspaper with a Christian perspective. The Court held that UVA's action constituted viewpoint discrimination in violation of the First Amendment.

Justice Kennedy, writing for the majority, explained that when a university makes funds available to encourage student expression, the university creates a limited public forum.

> Once it has opened a limited forum, however, the State must respect the lawful boundaries it has itself set. The state may not exclude speech where its distinction is not reasonable in light of the purpose served by the forum, nor may it discriminate against speech on the basis of its viewpoint.

*Id.* at ----, 115 S.Ct. at 2517 (citations omitted). A university may determine what subjects are appropriate for the forum, but the university may not proscribe positions students choose to take on those subjects. The Supreme Court discussed this important distinction in *Rosenberger* and made clear that content discrimination is permissible "if it preserves the purposes of the limited forum." *Id.* Viewpoint discrimination, however, is impermissible "when directed against speech that is otherwise within the forum's limitations." *Id.* Thus, a university might limit the funds it makes available for student activities to those involving Shakespearean literature. Within such a framework,

however, the university could not deny funding to critical interpretations of Shakespeare.

We recognize the malleability of the distinction between content discrimination, which is permissible, and viewpoint discrimination, which is not. *See* Robert C. Post, *Subsidized Speech,* 106 YALE L.J. 151, 166 (1996). Yet *Rosenberger* makes clear that government discrimination against speech because of its message is presumptively unconstitutional, even in public forums created by the state. *Id.* at ----, 115 S.Ct. at 2516. Justice Kennedy wrote:

> When the government targets not subject matter but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction. These principles provide the framework forbidding the State from exercising viewpoint discrimination, even when the limited public forum is one of its own creation.

*Id.* (citations omitted).

Section 16-1-28 as applied to GLBA clearly runs afoul of the above-quoted language from *Rosenberger.* USA's limited public forum does not prohibit discussion of the sodomy or sexual misconduct laws in general. Rather, based on § 16-1-28, USA prohibited funding to GLBA based on the Attorney General's unsupported assumption that GLBA fosters or promotes a *violation* of the sodomy or sexual misconduct laws. The statute discriminates against one particular viewpoint because state funding of groups which foster or promote *compliance* with the sodomy or sexual misconduct laws remains permissible. This is blatant viewpoint discrimination.

The Attorney General's feeble attempts to distinguish

*Rosenberger* are answered by *Rosenberger* itself. First, the Attorney General argues that viewpoint discrimination analysis is inappropriate in the context of state funding at the college level. However, *Rosenberger* involved state funding at the college level and made clear that "ideologically driven attempts to suppress a particular point of view are presumptively unconstitutional in funding, as in other contexts." *Id.* at ----, 115 S.Ct. at 2517.

Second, the Attorney General argues that we should apply a lower level of scrutiny to the statute because this case arises in a university setting. Of course, *Rosenberger* involved a university setting. Nevertheless, the Attorney General cites *Bishop v. Aronov,* 926 F.2d 1066 (11th Cir.1991), where we applied a middle-tier analysis to a First Amendment claim involving the University of Alabama. *Bishop* is inapposite because it involved a professor as the speaker. It is well-established that the government may determine "what is and is not expressed when it is the speaker or when it enlists private entities to convey its own message." *Rosenberger,* --- U.S. at ----, 115 S.Ct. at 2518. However, the government may not regulate expression based on viewpoint when it creates a limited public forum for expression by others. *Id.* at ---- - ----, 115 S.Ct. at 2518-19. In the present case, USA did not engage in speech itself but created a forum for student expression. The Attorney General's argument therefore misses the mark. In fact, *Rosenberger* suggests that the dangers of viewpoint discrimination are *heightened* in the university setting. "For the University, by regulation, to cast disapproval on particular viewpoints of its students risks the suppression of free

speech and creative inquiry in one of the vital centers for the nation's intellectual life, its college and university campuses." *Id.* at ----, 115 S.Ct. at 2520.

Simply put, *Rosenberger* is directly on point with regard to both forum analysis and viewpoint discrimination. The district court therefore properly concluded that § 16-1-28 as applied violates GLBA's First Amendment rights.

C. *Whether § 16-1-28 Violates The First Amendment On Its Face*

The district court also ruled that § 16-1-28 violates the First Amendment on its face. Facial invalidation of a statute is strong medicine and courts should be cautious in utilizing this drastic remedy. Generally, a statute should "be declared invalid to the extent that it reaches too far, but otherwise left intact." *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 504, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394 (1985). "[T]he normal rule [is] that partial, rather than facial, invalidation is the required course." *Id.* Facial invalidation is therefore inappropriate unless the court is convinced "that the identified overbreadth is incurable and would taint all possible applications of the statute." *Id.; see also Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 964-65, 104 S.Ct. 2839, 2850-51, 81 L.Ed.2d 786 (1984).

Thus, the dispositive question is whether the statute is capable of a narrowing interpretation that would render it constitutionally permissible.

> It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be "readily susceptible" to a narrowing construction that would make it constitutional, it will be upheld. The key to application of

this principle is that the statute must be "readily susceptible" to the limitation; we will not rewrite a state law to conform it to constitutional requirements.

*Virginia v. American Booksellers Assn. Inc.,* 484 U.S. 383, 397, 108 S.Ct. 636, 645, 98 L.Ed.2d 782 (1988). The district court concluded that the key language in the statute—"fosters or promotes a lifestyle or actions prohibited by the sodomy or sexual misconduct laws" and "encourage[s] its members or encourage[s] other persons to engage in [sodomy] or provide information or materials that explain how [sodomy] may be engaged in or performed."—was overbroad and not susceptible to a narrowing interpretation. We agree.

We would have to ignore the Supreme Court's instructions and rewrite the statute for it to pass constitutional muster because advocacy to violate the law is protected speech unless directed to inciting or producing imminent lawless action. *See Brandenburg v. Ohio,* 395 U.S. at 448, 89 S.Ct. at 1830. Therefore, § 16-1-28 is invalid on its face unless it could be interpreted as applying only to speech designed to incite or produce imminent lawless action. Such an interpretation is inconsistent with the plain meaning of the words of the statute. We agree with the district court that the statute is not capable of a narrowing interpretation and is therefore invalid on its face.

## V. CONCLUSION

Section 16-1-28 on its face and as applied to GLBA results in viewpoint discrimination in violation of the First Amendment. Accordingly, we affirm the judgment of the district court.

AFFIRMED.