OPINION
SILER, Senior Circuit Judge:
Mark J. McBurney, Roger W. Hurlbert, and Bonnie Stewart (collectively, the “Appellants”) appeal the district court’s dismissal of them 42 U.S.C. § 1983 action seeking declaratory and injunctive relief against the Attorney General of Virginia, the Deputy Commissioner and Director of Virginia’s Division of Child Support Enforcement (“DCSE”), and the Director of the Real Estate Assessment Division in Henrico County, Virginia (collectively, the “Appellees”). Before the district court, the plaintiffs alleged that Virginia’s Freedom of Information Act (“VFOIA” or “the Act”) violates the dormant commerce clause and the Privileges and Immunity Clause of the U.S. Constitution. The district court dismissed all parties from the suit on jurisdictional grounds, from which order this appeal arises.
For the following reasons, we AFFIRM in part, REVERSE in part, and REMAND.
I.
The VFOIA provides citizens of the Commonwealth of Virginia with a right of access to all public records held by the Commonwealth, its officers, employees, or agents. Va.Code Ann. §§ 2.2-3700 to .2-3714. In relevant part, the Act provides as follows:
Except as otherwise specifically provided by law, all public records shall be open to inspection and copying by any citizens of the Commonwealth during the regular office hours of the custodian of such records. Access to such records shall not be denied to citizens of the Commonwealth, representatives of newspapers and magazines with circulation in the Commonwealth, and representatives of radio and television *397 stations broadcasting in or into the Commonwealth. The custodian may require the requester to provide his name and legal address. The custodian of such records shall take all necessary precautions for their preservation and safekeeping.
§ 2.2-3704(A).
On January 21, 2009, McBurney and Hurlbert sued the Attorney General of Virginia, currently Kenneth T. Cuccinelli, II (the “Attorney General”),[1] Nathaniel L. Young, Deputy Commissioner and Director of Virginia’s DCSE (the “Deputy Commissioner”), and the Director of the Real Estate Assessment Division in Henri-co County, Virginia, currently Thomas C. Little (the “County Director”),[2] pursuant to 42 U.S.C. § 1983. They sought declaratory and injunctive relief from the enforcement of the VFOIA, which they claim violates the Privileges and Immunities Clause and the dormant commerce clause of the U.S. Constitution. The district court later allowed the plaintiffs to amend their complaint to add an additional plaintiff, Bonnie Stewart.

A. Plaintiffs’ Claims

Each plaintiff alleges different facts to support the common argument that the VFOIA violates the U.S. Constitution.

1. McBumey’s Claims

McBurney, a citizen of Rhode Island, and his wife Lore Mills were divorced in 2002. McBurney filed an application for child support with Virginia’s DCSE in July 2006; and, as a result of DCSE’s alleged failure to file the proper petition, McBurney claims he was denied “nearly nine months of child support payments.”
In 2008, McBurney submitted a VFOIA request to the DCSE seeking disclosure of certain documents that he believed would help resolve this dispute. Specifically he requested “all emails, notes, files, memos, reports, policies, [and] opinions” pertaining to him, his son, or his former wife. The DCSE denied his request on two grounds: first, because the information “[was] confidential and protected under the Virginia Code[,][§§ ] 63.2-102 and 63.2-103”; and second, because he was “not a Citizen of [the] Commonwealth of Virginia.” McBurney sent a second request, identical to the first except that he listed a Virginia address instead of his Rhode Island address. The DCSE again denied his request. This time, the DCSE only listed McBurney’s out-of-state citizenship as its reason for the denial. However, the DCSE did inform McBurney of his right to obtain this information under a different statute, the Government Data Collection and Dissemination Practices Act, Va.Code Ann. §§ 2.2-3800 to .2-3809. Later, McBurney submitted a request under this act and obtained over eighty requested documents.
McBurney contends that he did not receive all the documents he could have received under the VFOIA. He also contends that the DCSE’s denial obstructed his right to advocate on his own behalf and prohibited him from utilizing Virginia’s *398 dispute resolution procedures, thus violating the Privileges and Immunities Clause.

2. Hurlbert’s Claims

Hurlbert, a citizen of California, is the sole proprietor of Sage Information Services. He is in the business of requesting real estate tax assessment records for his clients from state agencies across the United States, including Virginia. On June 5, 2008, Hurlbert submitted a VFOIA request to Henrico County Assessor’s Office, which the office denied on the basis of his citizenship. On February 17, 2009, after litigation in this case had commenced, the County provided Hurlbert with an electronic copy of its 2008 real estate assessment database — -the subject of the 2008 VFOIA request. Hurlbert’s counsel returned this information without reading or reviewing it.
Hurlbert argues that the denial of his VFOIA request was unconstitutional, because it prevents him from pursuing his common calling on an equal basis with Virginia citizens in violation of the Privileges and Immunities Clause, and because it gives Virginia citizens an exclusive right of access to Virginia’s public records, in contravention of the dormant commerce clause.

S. Stewart’s Claims

Stewart, a citizen of West Virginia and Assistant Professor of Journalism at West Virginia University, submitted her VFOIA request in February 2009 to Virginia Commonwealth University and Virginia Polytechnic Institute and State University (“Virginia Tech”). Stewart’s request sought information about the salaries and benefit packages awarded to the presidents of Virginia’s public universities and was made in conjunction with a course project on the administration of public universities in other states. Both institutions denied her request, because she was not a citizen of Virginia.[3]
Stewart claims that the denial of her VFOIA request violates the Privileges and Immunities Clause because it prevents her from pursuing her common calling as an educator on an equal basis with Virginia citizens.

B. District Court’s Opinion

The district court granted the defendants’ motions to dismiss. First, it held that the Attorney General was not a proper party under the Eleventh Amendment. Because Stewart only alleged claims against the Attorney General, it correspondingly dismissed her as a plaintiff. Second, it held that both McBurney and Hurlbert lacked standing, and dismissed them as plaintiffs. Because McBurney was the only plaintiff to assert claims against the Deputy Commissioner, the district court also dismissed the Deputy Commissioner as a party. Similarly, because only Hurlbert had sued the County Director, the court dismissed him as well. Consequently, no parties remained before the court, and it dismissed the case.
II.
“[W]e review de novo a district court’s legal determination of whether Ex parte Young relief is available.” Franks v. Ross, 313 F.3d 184, 192-93 (4th Cir.2002) (internal quotation marks and alterations omitted). Similarly, “[w]e review a district court’s dismissal for lack of standing de novo.” Bishop v. Bartlett, 575 F.3d 419, 423 (4th Cir.2009) (citations omitted).
*399 III.
This case presents two threshold questions: first, whether the Attorney General is immune from suit under the Eleventh Amendment; and second, whether the plaintiffs have standing to sue. As to the first question, we agree with the district court that the Attorney General was not a proper party. We disagree, however, with the district court’s ruling on standing, so we reverse that part of its judgment, and remand for proceedings consistent with this opinion.

A. Sovereign Immunity

The district court concluded that the Attorney General was not a proper party to the suit under the Eleventh Amendment and the exception announced in Ex parte Young. The Appellants appeal this ruling and the district court’s consequent dismissal of Stewart.
The Eleventh Amendment provides that “[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.” U.S. Const. amend. XI.
The present suit is thus barred unless it falls within the exception announced by the Supreme Court in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment. Id. at 159-60, 28 S.Ct. 441. “The requirement that the violation of federal law be ongoing is satisfied when a state officer’s enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent.” Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 330 (4th Cir.2001) (citation omitted). The Ex parte Young exception is directed at “officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings ... to enforce against parties affected [by] an unconstitutional act.” Ex parte Young, 209 U.S. at 155-56, 28 S.Ct. 441 (emphasis added). Thus, we must find a “special relation” between the officer being sued and the challenged statute before invoking the exception. Id. at 157, 28 S.Ct. 441; Gilmore, 252 F.3d at 331. This requirement of “proximity to and responsibility for the challenged state action,” S.C. Wildlife Fed’n v. Limehouse, 549 F.3d 324, 333 (4th Cir.2008), is not met when an official merely possesses “[g]eneral authority to enforce the laws of the state,” id. at 331 (citation omitted). The special-relation requirement protects a state’s Eleventh Amendment immunity while, at the same time, ensuring that, in the event a plaintiff sues a state official in his individual capacity to enjoin unconstitutional action, “[any] federal injunction will be effective with respect to the underlying claim.” Id. at 333.
In dismissing the Attorney General because he lacked a “specific relation” to the VFOIA, the district court took judicial notice of the Attorney General’s Web site, which states that the Attorney General’s duties include, in pertinent part, “providing legal advice and representation to the Governor and executive agencies, state boards and commissions, and institutions of higher education; defending the constitutionality of state laws when they are challenged in court; and enforcing state laws that protect businesses and consumers.” The Appellants now contend that the “special relation” requirement is met, because (1) the Attorney General has a *400 specific statutory duty to enforce the VFOIA against state officials; and (2) even if he does not, his authority to issue official opinions and advice creates the requisite enforcement connection. In response, the Attorney General disputes the Appellants’ interpretation of the VFOIA’s enforcement provision, and posits that his general authority to issue advisory opinions is not sufficient to abrogate sovereign immunity under the Eleventh Amendment.
We agree with the Attorney General. First, he does not have a specific statutory duty to enforce the VFOIA against state officials. Although the VFOIA contains an enforcement provision that grants “the attorney for the Commonwealth” authority to petition for an injunction against a state official for a violation of the Act,[4] Va.Code Ann. § 2.2-3713(A), as used throughout the Code, the term “attorney for the Commonwealth,” id., refers not to the Attorney General, but rather to the Commonwealth’s Attorneys, who are elected local prosecutors. Compare Va.Code Ann. § 2.2-500 (stating that the Attorney General is the “chief executive officer of the Department of Law”) with §§ 15.2-1626, 1627 (providing that “every county and city shall elect an attorney for the Commonwealth,” and setting forth the office’s local prosecutorial duties). See also Va.Code Ann. § 2.2-511 (distinguishing between the duties of the Attorney General and the “attorney for the Commonwealth”). See generally In re Hannett, 270 Va. 223, 619 S.E.2d 465 (2005) (addressing the question of whether Va.Code Ann. § 19.2-156 provides for the appointment of a local attorney to serve as the “attorney for the Commonwealth” due to the prolonged absence of the elected “Commonwealth’s Attorney”). Thus, contrary to the Appellants’ characterization, the Attorney General does not possess a specific statutory duty to enjoin violations of the Act pursuant to § 2.2-3713(A).
Second, the Attorney General’s duty to issue advisory opinions is, like the Governor’s duty to uphold the state laws in Gilmore, “not sufficient to make [him] the proper part[y] to litigation challenging the law.” Gilmore, 252 F.3d at 331 (internal quotation marks and citation omitted). Our decision in Limehouse does not change this result. In Limehouse, the plaintiffs sought to enjoin the Director of South Carolina’s Department of Transportation (the “Director”) from continuing a project to construct a bridge before the final environmental impact statement (“FEIS”) was reconsidered pursuant to federal law. 549 F.3d at 331. In discussing the contours of the Ex parte Young doctrine, we stressed the following principles:
This “special relation” requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials. Primarily, the requirement has been a bar to injunctive actions where the relationship between the state official sought to be enjoined and the enforcement of the state statute is significantly attenuated. Such cases have been dismissed on the ground that general authority to enforce the laws of the state is an insufficient ground for abrogating Eleventh Amendment immunity. Thus, the Director’s connection to the [state statute] need not be qualitatively special; rather, “special relation” under Ex parte Young has served as a meas *401 ure of proximity to and responsibility for the challenged state action. This requirement ensures that a federal injunction will be effective with respect to the underlying claim.
Id. at 332-33 (internal quotations, citations, and alterations omitted).
We then rejected the Director’s argument that he did not have a “special relation” to the National Environmental Policy Act and its state-law analogues. We noted the Director’s supervisory authority over the state’s participation in the FEIS process, his “deep[ ] involve[ment]” in preparing the challenged FEIS and procuring permits to proceed with the construction of the bridge on the basis of the FEIS; and, pursuant to federal law, his authority as head of the “joint lead agency” with the Federal Highway Administration (FHWA), given that the two agencies cooperated to draft any environmental document required for the FEIS for the proposed bridge. Id. at 333. Thus, we concluded that the Director possessed “a sufficient connection to the alleged violation of federal law” to establish a “special relation” under Ex parte Young. Id. In contrast, the Attorney General’s authority over the VFOIA is “significantly [more] attenuated.” Id. As discussed supra,, the Attorney General has no specific statutory enforcement authority under the VFOIA. In addition, he has not issued any advisory opinions specifically directing state agencies to deny VFOIA requests by non-citizens,[5] nor has he participated in the decisionmaking process of those agencies. Thus, his general authority to issue advisory opinions, in the abstract, is not sufficient to establish a “special relation” for Ex parte Young purposes.
In addition, our holding is consistent with those of our sister circuits that have dismissed the Attorney General when no special relation existed between his office and the challenged statute. See Okpalobi v. Foster, 244 F.3d 405 (5th Cir.2001) (en banc) (plurality opinion) (holding that Attorney General was not a proper party where plaintiffs challenged a Louisiana statute that provided a private cause of action against doctors who performed abortions, because the Attorney General did not have a special enforcement connection to the statute); Smith v. Beebe, 123 Fed.Appx. 261 (8th Cir.2005) (holding that Attorney General was not a proper party in a § 1983 action, because he did not bear a special relation to a challenged tolling provision). We express no opinion on whether a special relationship would exist if an agency relies on an advisory opinion explicitly interpreting VFOIA to apply only to Virginia citizens. See Gay Lesbian Bisexual Alliance v. Evans, 843 F.Supp. 1424, 1426 (M.D.Ala.1993) (holding that the Attorney General of Alabama was a proper party in a suit challenging an Alabama statute that prohibited universities from *402 allocating public funds to support any group that promoted lifestyles prohibited by sodomy and sexual misconduct laws, because the university enforced the statute “allegedly in reliance on an ‘advisory opinion’ from the Attorney General”),[6] aff'd sub nom. Gay Lesbian Bisexual Alliance v. Pryor, 110 F.3d 1543 (11th Cir.1997) (affirming, without discussing, this holding).
Finally, even were we to find a special relation, we cannot apply Ex parte Young because the Attorney General has not acted or threatened to act. See Ex parte Young, 209 U.S. at 155-56, 28 S.Ct. 441; Gilmore, 252 F.3d at 330. The Attorney General has neither personally denied any of the Appellant’s VFOIA requests nor advised any other agencies to do so. Cf Lee v. Minner, 458 F.3d 194, 198-202 (3d Cir.2006) (holding that Delaware’s FOIA violated the Privileges and Immunities Clause and affirming the district court’s injunction barring the Attorney General from enforcing the law where plaintiff requested records from the Attorney General). Moreover, the Appellants do not allege that the Deputy Commissioner or the County Director relied on the Attorney General’s advice in denying their VFOIA requests. See Pryor, 110 F.3d 1543 (affirming, without discussing, the district court’s decision that the Attorney General of Alabama was a proper party, because the university relied “on a specific ‘advisory opinion’ from the Attorney General”). Because the Attorney General has not enforced, threatened to enforce, or advised other agencies to enforce the VFOIA against the Appellants, the Ex parte Young fiction cannot apply. See Ex parte Young, 209 U.S. at 155-56, 28 S.Ct. 441. We affirm the district court’s dismissal of the Attorney General and Stewart from the suit.

B. Standing

McBurney and Hurlbert next argue that the district court improperly dismissed them on standing grounds. The “irreducible constitutional minimum of standing” requires (1) “an injury in fact — a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical”; (2) “causation — a fairly traceable connection between the plaintiffs injury and the complained-of conduct of the defendant”; and (3) “redressability — a likelihood that the requested relief will redress the alleged injury.” Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 102-03, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal quotation marks and citations omitted); see Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000) (en banc) (same). “The standing doctrine, of course, depends not upon the merits, but on whether the plaintiff is the proper party to bring the suit.” White Tail Park, Inc. v. Stroube, 413 F.3d 451, 460 (4th Cir.2005) (internal quotation marks, citations, and alteration omitted). Indeed, “[i]f a plaintiffs legally protected interest hinged on whether a given claim could succeed on the merits, then every unsuccessful plaintiff will have lacked standing in the first place.” Id. at 461.

1. McBurney

The VFOIA contains several exemptions to protect confidential informa *403 tion, including an exemption from disclosure of “[a]ll records ... that pertain to ... child support enforcement.” Va.Code Ann. § 63.2-102. The district court concluded that McBurney lacked standing because he failed to allege an injury, based on its conclusion that the records requested were not available under the VFOIA. Specifically, the district court concluded that the DCSE denied McBurney’s request because all the requested materials were confidential and thus exempt from disclosure under the Act regardless of his citizenship. McBurney now argues that some of the requested documents were not confidential documents and that the DCSE’s denial with respect to these documents was based solely on the grounds of his non-citizenship.
It is undisputed that although McBurney received more than eighty documents related to his child support case under a different statute, he did not receive general policy information (i.e., documents discussing how the DCSE administers cases like his), information that would arguably not fall within the Act’s exemption for confidential documents. The Deputy Commissioner insists that McBurney never made a request for such general policy information. However, McBurney’s request sought “[a]ny and all treatises, statutes, legislation, regulations, administrative guidelines, or any other reference material that the DSS and/or DCSE relies upon in actioning or administering child support cases where one parent is overseas.” Thus, he has Article III standing to sue, because he has shown (1) injury in fact (lack of possession of the requested general policy information); (2) causation (the Deputy Commissioner continues to deny access to these records, although the basis for such denial is not clear); and (3) redressability (for which release of the information would remedy). See Pub. Citizen v. U.S. Dep’t of Justice, 491 U.S. 440, 449, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (recognizing that the Court’s “decisions interpreting the [FOIA] have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records”). The district court thus erred in dismissing McBurney.

2. Hurlbert

The district court held that Hurlbert did not have standing because he failed to plead either (1) monetary relief or (2) an ongoing injury as required for declaratory or injunctive relief. The district court acknowledged that “Hurlbert’s counsel in responsive briefs and out-of-court documents alludes to Hurlbert making future [V]FOIA requests,” but it refused to credit such assertions and held that the pleadings did not support a finding of Article III jurisdiction.
On appeal Hurlbert argues that the district court erred. He asserts that the court should have considered evidence outside of the pleadings, specifically, his affidavit submitted to support his cross-motion for a preliminary injunction. In this affidavit, he averred that after his VFOIA request was denied he “was dissuaded from making any further VFOIA requests in Henrico County.” He also contends that even if the court properly confined its analysis to the pleadings, it ignored portions of his complaint that implied an ongoing injury. The County Director argues that “[t]he existence of facts not pled ... are irrelevant when considering a motion to dismiss,” citing Bishop v. Bartlett, 575 F.3d 419 (4th Cir.2009), in support.
Here, the amended complaint itself is best read to plead an ongoing injury:[7] in *404 paragraph 36 Hurlbert alleged that the Act “makes it impossible” for him to “pursue his common calling by obtaining Virginia public records through the VFOIA on an equal basis with Virginia’s citizens.”[8] Given that the complaint stated sufficient facts to support standing,[9] the district court erred in dismissing Hurlbert for lack of standing.[10]

C. Constitutional Claims

We decline to address the merits of the Appellants’ claim, and instead remand for the district court to consider Hurlbert’s and McBurney’s claims in light of our holding that they have standing to sue.
AFFIRMED in part, REVERSED in part, and REMANDED for the district *405 court to proceed consistent with this opinion.

. The complaint named Robert Francis McDonnell, Attorney General at the time of filing. Pursuant to Federal Rule of Civil Procedure 25(d), McDonnell’s successor William Cleveland Mims was automatically substituted before the district court. After oral arguments in this case, the Appellees substituted the present named Appellee. For clarity, this opinion will refer to individual Appellees by their office titles.

. The complaint named Samuel A. Davis, Director at the time of filing. Prior to oral arguments in this case, the Appellees substituted the current County Director for Davis. See Fed.R.Civ.P. 25(d).

. Virginia Tech first claimed that its president operated without a contract, but later stated that the university did not possess any responsive records or, even if it did, it would not release them to her due to her out-of-state citizenship status.

. The provision provides, in pertinent part: Any person, including the attorney for the Commonwealth acting in his official or individual capacity, denied the rights and privileges conferred by this chapter may ... enforce such rights and privileges by filing a petition for mandamus or injunction!.]
Va.Code Ann. § 2.2-3713(A).

. Although the Appellants claim that the Attorney General has issued “hundreds” of advisory opinions on similar facts, they do not point us to any particular opinion in which the Attorney General has instructed state agencies not to process VFOIA requests by non-citizens. The opinions cited by the Appellants — 2 Op. Att’y Gen. 95 (2002) (regarding the circuit court clerk's duty to provide access to digital copies of the court's database of judicial or court records), and 2 Op. Att'y Gen. 149 (2003) (regarding the VFOIA's exception from disclosure for confidential information) — are inapposite, as they merely quote the "citizens of the Commonwealth” language in addressing other legal questions under the Act. Similarly, although the Appellants refer us to the Attorney General’s discussion of the Act's procedures on the official Web site, the site does not specifically direct agencies to deny claims by citizens, again merely parroting the broad "citizen” language of the statute. See Va. Coal, for Open Gov’t, FOIA Overview & FAQs, http://www.opengowa.o rg/virginiasfoia-the-law/foia-overview-afaqslawmenu-156 (last visited April 12, 2010).

. In Evans, the University of South Alabama requested an Attorney General opinion regarding the disbursement of its funds to a student group, the Gay Lesbian Bisexual Alliance; received an opinion that stated the funds should not be released; and acted in reliance on that opinion to deny funding, an act which, the plaintiffs argued, violated their First Amendment rights. Evans, 843 F.Supp. at 1426. In the instant case, however, the Attorney General was not requested for, nor did he issue advice respecting, the denial of claims under the VFOIA based on a claimant’s non-citizenship.

. Because the complaint stales an ongoing injury, we do not address whether the district *404 court should have considered Hurlbert’s affidavit.

.As the dissent quite rightly points out, this statement is “a conclusion of law derived from the factual assertions in paragraphs 15 and 16.” Infra at 412. The dissent objects to our "unwarranted” reliance on this "lone allegation,” infra at 411-12, and posits that "[t]here are simply no factual allegations supporting the conclusion that Hurlbert suffered a prospective, ongoing injury that is 'concrete and particularized' as to the amended complaint,” infra at 413 (internal quotation marks omitted). We respectfully disagree with this characterization. We read the conclusion of law in paragraph 36 in context with the very facts pled in paragraphs 15 and 16 of the complaint: (1) Hurlbert "is the sole proprietor of Sage Information Services”; (2) his May 2008 request had been denied on the basis of his non-citizenship; (3) he "is in the business of obtaining real estate tax assessment records”; and (4) he "obtains these records by submitting FOIA requests to state governmental agencies.” We agree with the dissent that the conclusion of law in paragraph 36, standing alone, would not be sufficient to plead an ongoing injury; however, when read with Hurlbert's factual allegations, we find it to be so. The factual allegations demonstrated that Hurlbert is the sole proprietor of a company that makes a business of submitting FOIA requests to states and federal agencies. We find that these facts are " 'sufficiently real and immediate to show an existing controversy.' ” Infra at 413 (quoting Comité de Apoyo a los Trabajadores Agricolas, 995 F.2d 510, 515 (4th Cir.1993)).
The dissent also states that "[o]nce the Director provided Hurlbert with the data he sought, Hurlbert failed to plead any additional facts in his amended complaint indicating that he was likely to make additional requests for such information in the immediate future.” Infra at 413. Because Hurlbert's amended complaint “mirrored” his complaint, the dissent concludes that "inferring an ongoing injuiy from the single sentence in paragraph 36 is simply too speculative and conjectural.” Id. at 413 (internal quotation marks omitted). Because we read the complaint as a whole to be sufficient, we respectfully disagree.

. Bishop does not change this analysis, because in Bishop the plaintiffs did not allege any injury at all. In Bishop, four North Carolina citizens challenged the process by which a constitutional amendment was placed before voters, arguing that it violated the Due Process Clause of the Fourteenth Amendment. 575 F.3d at 421. The district court dismissed the case for lack of standing, a decision we affirmed. Id. at 422. First, we noted that in the complaint the plaintiffs "did not allege that they had actually been misled by the ballot language.” Id. at 422. In fact, they later "acknowledged that even though each of them had voted in the November 2004 election, [not one of them was] misled by the ballot language.” Id. Thus, we agreed with the district court that there was no injury in fact. Id. at 424.

. The County Director also argues that Hurlbert’s claim is moot, because he was provided with the requested records. However, because Hurlbert has pleaded an ongoing injury, the fact that the government provided him with past records requested does not moot his claim going forward. See Friends of the Earth, Inc. v. Laidlaw Env’t Servs., 528 U.S. at 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (“[A] defendant claiming that its voluntary compliance moots a case bears a formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.” (citation omitted)).