Vagalebre v. SAU 47          CV-97-135-JD  02/24/98

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Vagalebre, et al.

     v.                              Civil No. 97-135-JD

SAU 47, et al.


                    O R D E R


     Plaintiffs George Vagalebre, Marilynn Vagalebre, William Hornak, and Toni Hornak are the parents of student athletes who attend Conant High School (Conant).  William and Toni Hornak sue individually and on behalf of their minor child, Michael Hornak.  Michael Hornak, a student at Conant, is also a plaintiff.  The defendants are the Jaffrey-Rindge School District, Jules D'Agostino, the superintendent of the school district, Tom Brennan, the principal of Conant, Jim Adams, the athletic director of Conant, and the Jaffrey-Rindge school board (board).[1]

     The plaintiffs allege that the defendants violated their constitutional rights through a number of acts, and they seek injunctive relief under 42 U.S.C. § 1983.  Specifically, the plaintiffs allege that the defendants: (1) violated their right to freedom of speech under the First Amendment; (2) violated their right to be free from unreasonable searches and seizures

_____

[1]The court need not differentiate between particular plaintiffs and defendants in light of its conclusions, unless otherwise noted.

under the Fourth and Fourteenth Amendments; and (3) violated Michael Hornak's rights under the New Hampshire Constitution and the Privileges and Immunities Clause of the Federal Constitution. Before the court is the defendants' motion to dismiss the case because it is moot and because the plaintiffs have failed to state a claim upon which relief can be granted (document no. 6).

## Background[2]

On December 18, 1995, the Jaffrey-Rindge School Board voted to implement a random drug testing policy for students at Conant High School who wished to participate in interscholastic athletics. See Compl. at 4. The policy required the students and a parent or guardian to sign a form consenting to the random drug testing. See id. at 5. The form stated that the signer "voluntarily agree[d]" to be subject to the policy's procedures, and accepted all aspects of the procedure as described in the policy statement. See id. The policy was implemented in the Spring of 1996. See id. at 4. Between September 1996 and December 1996, fifty-five people had been tested, none of whom tested positive for drug use. See id. at 6.

Plaintiff Michael Hornak refused to sign the statement in the fall of 1996 and was precluded from participating in

---

[2]The facts described herein are either alleged by the plaintiffs or are not in dispute.

2

athletics. See Compl. at 5. On or around September 4, 1996, George Vagalebre altered the form and changed "voluntarily agree" to "submit" and "agree" to "will submit." He also appended language to the effect that the policy violated his civil rights, and that he was forced to sign the form so that his daughter could participate in athletics. See id. His daughter, Marilee, was thereafter precluded from participating in athletics unless she and her father signed an unaltered form. See id. Apparently they then signed an unaltered form as Marilee was later subjected to random drug testing. See id. at 7.

In addition to this drug testing policy, the school also had a policy of searching student bags when the students participated in field trips. See Compl. at 6. The search policy was applied uniformly to all students, without a requirement of reasonable suspicion or probable cause. See id. On January 31, 1996, an employee of the school district walked down the aisle of a school bus and searched each student's bag and belongings, including those of Michael Hornak and Marilee Vagalebre. See id.

The plaintiffs complained of these policies at school board meetings. See id. Prior to the incidents at issue in this case, on October 1, 1990, the school board had adopted a policy that requires an individual who wishes to speak at a meeting to arrange in advance to be put on the agenda. See Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 5 ("Defs.' Mem."); D'Agostino

3

Aff. at 2.  This policy, however, was not followed until the plaintiffs began speaking out against the random drug testing.  See Compl. at 6.  The board also requires that questions be put in writing, and apparently refuses to answer questions that are not in writing.  See id.

On February 26, 1997, the plaintiffs filed a complaint in the New Hampshire Superior Court in Cheshire County.  On March 8, 1997, the Annual School District Meeting for the Jaffrey-Rindge School District was held.  At the meeting the voters passed an advisory warrant article by a margin of 194-134 which recommended to the school board that it withdraw its random testing policy.  See Defs.' Mem. at 4.  On March 10, 1997, the school board voted to withdraw the random drug testing program, effective March 10, 1997.  See Defs.' Mem., Ex. C at 2.  Moreover, at an earlier school board meeting on March 3, 1997, the board decided that it would not conduct further field trip searches of school bags and personal belongings until the school board acted on a policy revision at its April 1997 meeting.  See Defs.' Mem., Ex. D at 3.  On June 2, 1997, the school board adopted a search policy that does not include the uniform search of bags and personal belongings during field trips.  See Defs.' Mem., D'Agostino Aff. at 2.  The policy was effective as of August 27, 1997, for the 1997-1998 school year.  See id.

In count one of their complaint, the plaintiffs assert that

4

the defendants violated their right to free speech under the First Amendment. See Compl. at 7. Specifically, they argue that their rights were violated when they were forced to sign the consent form, when they were unable to speak out against the random drug testing policy at the school board meeting contrary to the board's prior practices, and when they were denied access to information regarding the drug testing policy. See id. In counts two and three, the plaintiffs argue that the random drug testing policy and the searches of bags and personal belongings during field trips violates their right to be free from unreasonable searches and seizures. See id. at 8. Finally, in count four, the plaintiffs assert that the school's refusal to allow Michael Hornak to participate in athletics deprives him of the rights secured by the Privileges and Immunities Clause of the Federal Constitution, and of his rights under the New Hampshire Constitution. See id. at 8, 9. The plaintiffs sought injunctive relief and attorney's fees from the court.

On March 20, 1997, the defendants removed the plaintiffs' action to this court. On June 30, 1997, the defendants filed a motion to dismiss the case on a number of grounds. See Defs.' Mot. to Dismiss at 1-4. As elaborated upon in their memorandum of law, the defendants first argue that the claims seeking injunctive relief from policies providing for random drug testing and suspicionless searches should be dismissed as moot because

5

the policies have been repealed. See Defs.' Mem. at 2. Second, they argue that the facts alleged regarding the policies fail to state a claim on which relief can be granted. See id. Finally, the defendants argue that the First Amendment complaints arising from the school board's procedural policy governing its meetings should also be dismissed because they fail to state a claim on which relief can be granted. See id.

## Discussion

A.   Mootness

"In general a case becomes moot '"When the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."'" Murphy v. Hunt, 455 U.S. 478, 481 (1982) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969))). "[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot," unless the defendant demonstrates that "'there is no reasonable expectation that the wrong will be repeated.'" United States v. W.T. Grant Co., 345 U.S. 629, 632, 633 (1953) (quoting United States v. Aluminum Co., 148 F.2d 416, 448 (1945)). The defendants' burden "is a heavy one." W.T. Grant Co., 345 U.S. at 633. The court should consider "the bona fides of the expressed intent to [dis-

6

continue], the effectiveness of the discontinuance and, in some cases, the character of the past" behavior.  Id. at 633.

In Habetz v. Louisiana High School Athletic Ass'n., the plaintiff was a female student who sought to enjoin the defendant, the Louisiana High School Athletic Association, from enforcing an exclusionary rule that prevented her from 'trying out' for her high school baseball team.  See 842 F.2d 136, 137 (5th Cir. 1988) (per curiam).  The relief was denied, and while on appeal the defendant revised its rules to allow females to try out for the team.  The Fifth Circuit found that the defendant's revision of the rules rendered the case moot.  See id.  The defendant in Habetz had exhibited no bad faith in its revision of the statute, had given no indication that it would revert to its past practices, and had done "all that it [could] to change the conditions" of which the plaintiff had complained.  See id. at 138.

The facts in this case bear a close resemblance to those in Habetz.  On February 26, 1997, the defendants filed their complaint.  On March 8, 1997, at the annual school district meeting, voters in the school district passed by a substantial margin an article supporting the repeal of the school's drug testing policy.  On March 10, 1997, the school board repealed the drug testing policy.  The minutes of the meeting indicate that the decision to repeal was driven by the vote at the annual

7

school board meeting. Hope was expressed that with the policy rescinded "the community would work together, rather than apart, to fight drugs," and that "there has to be a better way" to do so than with the policy. Defs.' Mem., Ex. C at 1, 2. Moreover, the board members stated their disappointment at the lack of community support, but resolved that "those who came [to vote] have told us what to do," and that without "the support of the community" the board "should vote [the policy] down." Id. at 2. The school board did not mention the plaintiffs' lawsuit in its discussion.

The behavior of the school board indicates that it is unlikely they will return to the drug testing policy. The school board has not vacillated between revoking, revising, and reenacting the policy. Nothing suggests that the school board was seeking to circumvent the judicial proceedings or that it was otherwise acting in bad faith.

The school board's recision of the policy to conduct uniform searches of bags and personal belongings during field trips is similar to its recision of the drug testing policy. On March 3, 1997, the school board voted to suspend the search policy. The minutes of the March 3 meeting indicate that the decision was intended to better conform the school's policy to constitutional requirements. See Defs.' Mem., Ex. D at 2, 3. Although people present at the meeting had discussed possible alternative

8

policies, the board concluded that it would check with an attorney and research applicable "case law." See id. at 3. At the school board's June 2, 1997, meeting, when the school board ultimately chose to eliminate the policy of conducting searches of bags on field trips, there was no indication of any ulterior motive or bad faith. See Defs.' Mem., Ex. E at 4; Julius D'Agostino Aff. at 2. Nor was the plaintiffs' lawsuit even mentioned by the board. Finally, there is no suggestion that the school board has vacillated between revoking and reenacting the policy of the field trip searches.

The defendants have "done all that [they] can to change" the drug testing and search and seizure policies of which the plaintiffs complain. Habetz, 842 F.2d at 138. In revoking both of the challenged policies, there is no evidence that the school board acted in bad faith, nor is there any indication that it will revert to the challenged practices in the future. Any assertion that the board might renew the old policies is mere speculation. Given the general disposition of the community, the school board's responsiveness, and the school board's shift in policies, this court cannot agree with the plaintiffs that there is some reasonable expectation that the defendants will revert to the allegedly unlawful conduct. See W.T. Grant Co., 345 U.S. at 633.

In their opposition to the defendants' motion to dismiss,

9

the plaintiffs liken this case to <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S. 287 (1982). <u>See</u> Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, at 8 (Pls.' Mem.). In <u>Mesquite</u>, the Supreme Court found that the defendant city's voluntary cessation of its conduct did not render the case moot. <u>See</u> <u>id.</u> at 289. The city had exempted the plaintiff from a local ordinance establishing an age restriction on its potential patrons. <u>See</u> <u>id.</u> at 286. However, the city refused to grant the plaintiff an operating license on other grounds. <u>See</u> <u>id.</u> at 287. After a state court issued an injunction requiring the city to grant the license, the city revoked the exemption on the age restriction. <u>See</u> <u>id.</u> at 288. When the plaintiff then filed suit in federal court, the city revised the ordinance and asserted that the issue was moot. <u>See</u> <u>id.</u> Because the factual circumstances indicated that it was likely the defendants would reenact the previous ordinance if the suit was dismissed, the Supreme Court did not find the case to be moot. <u>See</u> <u>id.</u> at 289.

The case at hand is readily distinguishable from <u>City of Mesquite</u> on the same grounds that the Fifth Circuit distinguished <u>Habetz</u>. In <u>Mesquite</u> the defendant's prior conduct indicated a likelihood that it would return to its challenged practices once the threat of a lawsuit had passed. <u>See</u> <u>Habetz</u>, 842 F.2d at 137. There is no such conduct in the case at hand. Moreover, as in <u>Habetz</u>, in this case there is no indication of bad faith or a

10

likelihood that the defendants will attempt to reverse their actions.  See id. at 138.

Similarly, the plaintiffs' reliance on City of Los Angeles v. Lyons, 461 U.S. 95 (1983), and Northeastern Florida Chapter of Associated General Contractors v. Jacksonville, 508 U.S. 656 (1993), is misplaced.  In Lyons, the Supreme Court held that a moratorium on chokeholds by the Los Angeles Police Department did not render the plaintiff's suit to enjoin the use of chokeholds moot.  See Lyons, 461 U.S. at 101.  However, the moratorium by its own terms was not permanent.  It was effective only while the board of police commissioners reviewed various studies on alternative control techniques, and the defendant acknowledged that it could be lifted at anytime.  See id. at 100, 101.  In Jacksonville, the Supreme Court found the case was not moot because "[t]here [was] no mere risk that Jacksonville [would] repeat its allegedly wrongful conduct; it [had] already done so." Jacksonville, 508 U.S. at 661-62.

The court consequently finds that the plaintiffs' claims seeking injunctive relief from the random drug testing policy and the field trip search policy are moot.  Therefore, counts two, three, and four of the plaintiffs' complaint are dismissed, as well as that portion of count one which alleges a First Amendment violation arising from the requirement that the plaintiffs sign a consent form.

11

B.    Failure to State a Claim

The plaintiffs assert that several acts of the defendants violated their First Amendment rights under the Federal Constitution as well as their rights under the New Hampshire Constitution.[3]  See Compl. at 7.  The court has already addressed the plaintiffs' argument that their First Amendment rights have been violated by the requirement that they sign unmodified consent forms, supra.  The plaintiffs also assert that the defendants violated their rights by enforcing a pre-existing but previously unenforced policy requiring participants at the meeting to register in advance.  See id.  Additionally, in their memorandum of law, the plaintiffs argue that the policy itself is facially unconstitutional under both the New Hampshire and Federal Constitutions.  See Pls.' Mem. at 22, 23; but see Compl. at 7.  Finally, the plaintiffs argue that their First Amendment rights were violated by the fact that the drug testing policy "was not discussed in an open forum" before it was implemented, see Pls.' Mem. at 16; but see Compl. at 4, 7, and that certain information regarding the random drug testing policy was not provided to them, see Compl. at 7.  The defendants move to have

_____

[3]The court assumes for the purposes of this motion that the plaintiffs' complaint is broad enough to encompass the plaintiffs' arguments expressed in their memorandum of law, despite the fact that some of their arguments appear to be beyond the scope of the complaint.  See Compl. at 7; but see Pls.' Mem. at 16-23.

these First Amendment claims dismissed for failure to state a claim upon which relief may be granted.

Because the defendants have already filed an answer to the plaintiffs' complaint, the pleadings have closed under Fed. R. Civ. P. 7(a). As such, the court will treat the defendants' motion to dismiss as a motion for judgment on the pleadings. See Fed. R. Civ. P. 12(c). The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion. See Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 182 (7th Cir. 1986). In both cases, the court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P. 12(b)(6)). Great specificity is not required to survive a Rule 12 motion. "[I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of facts.'" Garita, 958 F.2d at 17 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990)). However, a plaintiff cannot rely on "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987) (quoting Snowden v. Hughes, 321 U.S. 1, 10 (1944)). In the end, the court may grant a Rule 12 motion to

13

dismiss "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

The ability of the state to regulate First Amendment activities turns in part upon the forum in which the speech occurs. See Grossbaum v. Indianapolis-Marion County Bldg., 100 F.3d 1287, 1296 (7th Cir. 1996). There are three types of fora recognized by the Supreme Court: public fora, limited public fora, and nonpublic fora. See Perry Educ. Assoc. v Perry Local Educators' Assoc., 460 U.S. 37, 45-46 (1983). School board meetings have been categorized as "limited public fora." For speech that is within the parameters of the limited public forum, a state is bound by the constitutional requirements that are applicable to traditional public fora. See Perry, 460 U.S. at 46. In such fora, "[r]easonable time, place, and manner restrictions are permissible . . . ." Id. Such restrictions are reasonable if they "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." United States v. Grace, 461 U.S. 171, 177 (1983) (quoting Perry, 460 U.S. at 45). Additionally, "[t]he necessities of confining a [limited public] forum to the limited and legitimate purposes for which it was created may justify the State in reserving it for certain groups

14

or for the discussion of certain topics." <u>Rosenberger v. Rector of Univ. of Va.</u>, 515 U.S. 819, 829 (1995). Content discrimination may therefore be permissible "if it preserves the purposes of that limited forum," while "viewpoint discrimination . . . is presumed impermissible when directed against speech otherwise within the forum's limitations." <u>Id.</u> at 830.

The plaintiffs argue that the school board policy is facially invalid. <u>See</u> Pls.' Mem. at 22-23. Whether restrictions are reasonable time, place, and manner limitations, and whether content-based restrictions are reasonable in light of the purposes served by the forum, are issues of law to be determined by the court. <u>See, e.g.,</u> <u>Tollis Inc. v. San Bernardino</u>, 827 F.2d 1329, 1332 (1987). In this case, the school board stated in its policy that it desired "citizens of the district to attend its sessions so that they may become better acquainted with the operations and programs of the schools and that the Board may have opportunity [sic] to hear the wishes and ideas of the public." Defs.' Mem., Ex. F. To "assure that persons who wish to appear before the Board may be heard and, at the same time, conduct [the board's] meetings properly and efficiently," the board's procedural policy governing its meetings: (1) requires participants to "register" in advance; (2) requires the presentation to be as brief as possible; and (3) permits "[s]peakers [to] offer such objective criticisms of school

15

operations and programs as concern them . . ." but prohibits "personal complaints [against] school personnel [or] against any person connected with the school system . . ." as such issues against individuals are to be handled through other channels.[4] Id. The policy does not otherwise provide for any kind of discretionary selection by the school board of either: (1) the participants; (2) the subject matter discussed; or (3) the viewpoints expressed on the subject matter discussed.

In Kindt v. Santa Monica Rent Control Board, 67 F.3d 266 (9th Cir. 1995), the Ninth Circuit upheld a rent control board's regulations governing its meetings that were similar to those in this case. The regulations required participants to fill out "chits" in advance indicating their desire to participate in the meeting, and limited them to three minutes. See id. at 267. The board's regulations were found to be reasonable time, place and

---

[4]Registration required the participant to "inform the Superintendent of the desire to [participate] and of the topic to be discussed as early as possible, but at least seven days before the meeting." Defs.' Mem., Ex. F. George Vagalebre alleges that special meetings are on occasion announced with less than one week notice. Pls.' Mem., George Vagalebre Aff. at 3. Simply because the school board creates a limited public forum at regular meetings does not mean that a limited public forum is also created at special meetings, and there is nothing to suggest that such a forum has indeed been created at special meetings. Nonetheless, the court concludes that the policy is valid as a reasonable time, place, and manner restriction governing the special meetings for the reasons discussed infra, and because the policy leaves open the opportunity for the public to otherwise speak at the regular meetings.

16

manner regulations, and the district court's grant of summary judgment was upheld. See id. at 271-72.

In this case, the registration and brevity requirements are similarly reasonable time, place, and manner restrictions: (1) they are content-neutral; (2) they are narrowly tailored to the board's significant interest in engaging in a responsive dialogue with the public while conducting an efficient meeting; and (3) they leave ample opportunity for the public to communicate. Moreover the forum, the school board meeting, is designed to address the general "operation and programs" of the schools, and is opened to public discussion on this topic. See Defs.' Mem., Ex. F. The court concludes the limitation prohibiting discussion of personal grievances limits the content, not the viewpoint, of the meeting, and is therefore "'reasonable in light of the purpose served by the forum.'" Rosenberger, 515 U.S. at 829-830 (quoting Cornelius v. NAACP Legal Defense & Ed. Fund, 473 U.S. 788, 804-06 (1985)); see also Perry, 460 U.S. at 49.

Relying on New Hampshire v. Chong, 121 N.H. 860 (1981), the plaintiffs argue that the policy violates Articles 32 and 22 of the New Hampshire Constitution, which guarantee the people's right to freedom of speech and to assemble in an orderly and peaceful manner to petition the public or their representatives. See N.H. Const. pt. 1, arts. 22, 32. In Chong, the New Hampshire Supreme Court found a city ordinance unconstitutional because it

17

required activists to obtain a permit from the chief of police before they could pass out handbills on city streets, and it endowed the chief of police with unfettered discretion in issuing the permits. However, the plaintiffs' reliance on Chong is misplaced. Chong is readily distinguished from the case at hand because: (1) a limited public forum is at issue here; and (2) the school board policy confers no discretion on the board to determine who can speak and on what issues, beyond excluding issues involving personal grievances.

Finally, the plaintiffs assert in their complaint that the school board practiced viewpoint discrimination by applying the policy only after the plaintiffs had begun to voice their disapproval of the school's drug-testing and "field trip" search policies. The administration of regulations or policies in such a manner as to discriminate against particular viewpoints is an abridgment of First Amendment rights. See Gay Lesbian Bisexual Alliance v. Pryor, 110 F.3d 1543, 1149 (11th Cir. 1997) ("Viewpoint discrimination, however, is impermissible 'when directed against speech that is otherwise within the forum's limitations.'") (quoting Rosenberger, 515 U.S. at 830). Because the plaintiffs allege that the policy, otherwise left in a dormant state, was revived only so as to suppress their viewpoint on issues properly within the forum's limitations, the plaintiffs

18

have stated a claim upon which relief can be granted.[5]

Given the resolution of the other claims asserted by the plaintiffs, the court strongly recommends that the parties engage in good faith efforts to reach a non-trial disposition of this remaining claim.[6]  The parties shall file a status report with the court on or before March 11, 1998.

## Conclusion

The court denies the defendants' motion as to that portion of count one which asserts viewpoint discrimination in the application of the procedural policy governing the school board

_____

[5]The plaintiffs also claim that the defendants violated the plaintiffs' First Amendment rights by enacting policies without an open forum discussion, see Pls.' Mem. at 16; but see Compl. at 7, and by failing to provide certain information, see Compl. at 7.  The plaintiffs have not supplied any authority in support of these claims, despite the defendants' motion to dismiss the claims under Rule 12, nor is the court aware of any such authority.  Indeed, the plaintiffs have failed even to mention these claims in their memorandum of law, except in one passing reference to the open discussion claim.  See Pls.' Mem. at 16. The plaintiffs cannot rely upon such "bald assertions," Chongris, 811 F.2d at 37, and these claims are therefore dismissed.

[6]This claim only implicates George and Marilynn Vagalebre, Toni Hornak, the school district, and the school board.

19

meetings, and grants the motion as to the remainder of count one as well as counts two, three, and four (document no. 6).

    SO ORDERED.


                                    _____
                                    Joseph A. DiClerico, Jr.
                                    District Judge

February 24, 1998

cc:  Dawn E. Caradonna, Esquire
     Diane M. Gorrow, Esquire