PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RICHARD L. BISHOP; JACK L.
MOORE; MICHAEL A. JOYCE;
CHRISTOPHER R. DONAHOE,

       *Plaintiffs-Appellants,*

          v.

GARY O. BARTLETT, Executive
Director of the North Carolina
State Board of Elections, in his
official capacity; LARRY LEAKE;
LORRAINE G. SHINN; CHARLES
WINFREE; GENEVIEVE C. SIMS;
ROBERT CORDLE, Members of the
State Board of Elections, in their
official capacities; MICHAEL F.
EASLEY, Governor of the State of
North Carolina, in his official
capacity; ROY COOPER, Attorney
General of the State of North
Carolina, in his official capacity;
BEVERLY PERDUE, Lieutenant
Governor of the State of North
Carolina, in her official capacity;
ELAINE F. MARSHALL, Secretary of
State of the State of North
Carolina, in her official capacity;
DENISE WEEKS, Principal Clerk of
the North Carolina House of
Representatives, in her official
capacity;

No. 07-1840

JANET PRUITT, Principal Clerk of
the North Carolina Senate, in her
official capacity; JOE HACKNEY,
Speaker of the North Carolina
House of Representatives, in his
official capacity,

                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Louise W. Flanagan, Chief District Judge.
(5:06-cv-00462-FL)

Argued: May 13, 2009

Decided: July 29, 2009

Before TRAXLER, Chief Judge, GREGORY, Circuit Judge,
and Frederick P. STAMP, Jr., Senior United States District
Judge for the Northern District of West Virginia,
sitting by designation.

Affirmed by published opinion. Judge Gregory wrote the
opinion, in which Chief Judge Traxler and Senior Judge
Stamp joined.

**COUNSEL**

**ARGUED:** Jeanette K. Doran, NORTH CAROLINA INSTI-
TUTE OF CONSTITUTIONAL LAW, Raleigh, North Caro-
lina, for Appellants. Alexander McClure Peters, NORTH

CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Robert Flynn Orr, NORTH CAROLINA INSTITUTE OF CONSTITUTIONAL LAW, Raleigh, North Carolina, for Appellants. Roy Cooper, North Carolina Attorney General, Tiare B. Smiley, Special Deputy Attorney General, NORTH CAROLINA DEPART-MENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

---

**OPINION**

GREGORY, Circuit Judge:

Four North Carolina citizens challenge the process by which a proposed state constitutional amendment was placed before voters. In particular, the plaintiffs contend that the language used on the ballot to describe the amendment was misleading. That constitutional amendment, known as "Amendment One," authorized local government entities to issue bonds for certain types of development projects without first receiving voter approval. Because the plaintiffs were not themselves misled by the amendment process and did not otherwise allege sufficient facts to support their standing to sue, we affirm the district court's dismissal of the case.

I.

North Carolina Session Law 2003-403, signed into law in August 2003, provided for the submission of Amendment One to a vote in the November 2004 statewide general election. If ratified by the voters, Amendment One would add a new section to Article V of the North Carolina Constitution. That new section would permit the North Carolina General Assembly to develop a method for local government entities to borrow money to finance public improvements associated with private development projects through the creation of development financing districts. Furthermore, so long as only

the additional tax revenues from the development districts were used to secure the financing for the projects, local governments would be permitted to obtain the financing without a referendum. Absent this constitutional amendment, Article V, Section 4(2), of the North Carolina Constitution generally requires a referendum before a government entity may incur such a debt.

Amendment One was ultimately ratified by the voters of North Carolina, with 1,504,383 (51.2%) voting in favor of the Amendment, and 1,429,185 (48.8%) voting against the Amendment. However, the plaintiffs allege that Amendment One should be invalidated because the amendment process violated the Due Process Clause of the Fourteenth Amendment. In particular, the plaintiffs claim that the actual language of Amendment One did not appear on the ballot, but rather only "an abbreviated summary with potentially misleading language." (J.A. 26.) According to the plaintiffs, the language on the ballot "was misleading and insufficient to adequately apprise voters that, if passed, the amendment would deprive them of their constitutionally given right to approve or disapprove the issuance of the bonds." (*Id.*)

In the plaintiffs' complaint, they did not allege that they had actually been misled by the ballot language. In fact, the plaintiffs later acknowledged that even though each of them had voted in the November 2004 election, none were misled by the ballot language. Nevertheless, the plaintiffs maintain that the constitutionally infirm amendment process caused the deprivation of their right to vote on future bond referenda. At the time of the filing of this suit, the city of Roanoke Rapids, North Carolina, had received approval to issue bonds on a project, but the bonds had not yet been issued. One of the plaintiffs, Jack L. Moore, is a registered voter in Roanoke Rapids, and he claims that he has been deprived of his right to vote on the issuance of bonds to finance the project. Similar projects were also under consideration in Raleigh, Charlotte, Chapel Hill, and Kannapolis.

After the plaintiffs filed this lawsuit, which included both federal and state constitutional due process claims, the defendants filed a motion to dismiss the suit. Although neither party raised the issue of standing, the district court, on that ground, granted the defendants' motion to dismiss the claims arising under federal law. The district court then declined to exercise supplemental jurisdiction over the remaining state law claims. The plaintiffs appeal the district court's determination as to the federal law claims.

## II.

### A.

We review a district court's dismissal for lack of standing de novo. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005); *Piney Run Pres. Ass'n v. County Comm'rs of Carroll County*, 268 F.3d 255, 262 (4th Cir. 2001). Whether the issue of standing is first raised by the parties or by a court is irrelevant to our review, as standing implicates our jurisdiction to hear a case. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977); *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216, 1223 (4th Cir. 1980).

### B.

The power of federal courts to entertain suits is circumscribed by Article III of the United States Constitution, which limits judicial authority to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992); *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Accordingly, "the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process," and thus meet the requirements of Article III. *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990).

The standing doctrine has both constitutional and prudential components. *Allen v. Wright*, 468 U.S. 737, 751 (1984).

In order to satisfy the constitutional component of standing, a party must meet three requirements:

> (1) [the party] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61); *accord Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 231 (4th Cir. 2008).

With regard to the prudential component of standing, courts generally recognize three self-imposed constraints. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982); *Allen*, 468 U.S. at 751. First, "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499; *see, e.g.*, *United States v. Richardson*, 418 U.S. 166 (1974). Second, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499; *accord Valley Forge*, 454 U.S. at 474. Third, "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *see, e.g.*, *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970).

In determining whether a party has standing to bring suit, the party invoking the jurisdiction of the court bears the burden of establishing standing. *FW/PBS, Inc. v. City of Dallas*,

493 U.S. 215, 231 (1990); *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotations omitted). Nevertheless, the party invoking the jurisdiction of the court must include the necessary factual allegations in the pleading, or else the case must be dismissed for lack of standing. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

After examining the allegations in the plaintiffs' complaint, we conclude that they are insufficient to support standing. The plaintiffs' federal due process claim relates solely to the manner in which Amendment One was presented and made available to the voters during the November 2004 election. Yet the plaintiffs do not contend that they—or any other voter, for that matter—were actually misled by the ballot language or that they unsuccessfully attempted to obtain the full text of Amendment One. Rather, the plaintiffs contend only that the ballot language contained "potentially misleading language." (J.A. 26.) If there is an "interest in maintaining the effectiveness of . . . votes," *Coleman v. Miller*, 307 U.S. 433, 438 (1939), it is held by those voters who were misled by the amendment process. The plaintiffs' interest, by contrast, is "merely a claim of 'the right, possessed by every citizen, to require that the Government be administered according to law . . . .'" *Baker v. Carr*, 369 U.S. 186, 208 (1962) (quoting *Fairchild v. Hughes*, 258 U.S. 126, 129 (1922)). This type of abstract, generalized interest clearly fails to meet the requirement that an injury be concrete and particularized.

The plaintiffs, perhaps recognizing that they did not suffer a cognizable injury at the time of the November 2004 election, claim that they are now injured by the amendment process insofar as they are denied the right to vote on future bond referenda. Their complaint specifically identified one plain-

tiff, Moore, who resides in a city in which tax increment financing bonds were preliminarily approved without a referendum.* According to the plaintiffs, even if the allegations that they have lost the right to vote on future bond referenda are too generalized to support standing, the deprivation of Moore's right to vote on the bonds for the Roanoke Rapids project satisfies the injury-in-fact requirement.

It is without dispute that the right to vote is "the most basic of political rights," *FEC v. Akins*, 524 U.S. 11, 25 (1998), such that the government's interference with that right may satisfy the injury-in-fact requirement. *See id.* Furthermore, the fact that the deprivation of Moore's right to vote on the Roanoke Rapids project was shared by all residents of the city does not necessarily mean that his injury is merely a "generalized grievance." In *Akins*, the Supreme Court clarified this distinction: "Often the fact that an interest is abstract and the fact that it is widely shared go hand in hand. But their association is not invariable, and where a harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Id.* at 24. The deprivation of the right to vote is just such a concrete harm, *see Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 223 n.13 (1974), and thus its widely shared nature does not preclude a finding that Moore has suffered an injury in fact.

Although the deprivation of Moore's right to vote on the Roanoke Rapids project satisfies the injury-in-fact requirement, that harm was not directly caused by any governmental action towards him, but rather by the amendment process during the November 2004 election. In these types of cases, it may be particularly difficult for an indirectly affected party to

---

*While there is some question regarding whether, at the time of filing, the Roanoke Rapids project had reached the critical point in which Moore's right to vote was implicated, we will assume for purposes of this opinion that the project had reached a point in which the issuance of bonds was imminent.

satisfy the causation and redressability requirements. *See, e.g.*, *Warth*, 422 U.S. at 504-05; *Simon v. E. Ky. Welfare Rights Org.* (*EKWRO*), 426 U.S. 26, 44-46 (1976). In this case, the indirect nature of the harm to Moore renders it impossible for the plaintiffs to satisfy the causation requirement.

In order to prove causation, a plaintiff must demonstrate that the injury "fairly can be traced to the challenged action of the defendant, and not . . . result[ing] from the independent action of some third party not before the court." *EKWRO*, 426 U.S. at 41-42. Here, the deprivation of Moore's right to vote on the Roanoke Rapids project was caused by the ratification of Amendment One by a majority of voters in the November 2004 election. While it is true that the plaintiffs further allege that the ballot language was "misleading and insufficient to adequately apprise voters" of the effect of ratification of Amendment One (J.A. 26), they did not allege in their complaint that any voters were actually misled by the language or that the result of the election would have been different had the ballot contained the complete text of Amendment One. These types of allegations, at a minimum, are necessary to make a causal connection between the deprivation of Moore's right to vote on the Roanoke Rapids project and the amendment process.

Moreover, even if the plaintiffs had alleged that other voters had been misled by the ballot language, the "line of causation" between the ballot language and the passage of Amendment One is "attenuated at best." *See Allen*, 468 U.S. at 757 (concluding that IRS' granting of tax exemptions to racially discriminatory schools was not sufficiently causally connected to desegregation to confer standing). Indeed, it is "entirely speculative" that the outcome of the November 2004 election would have been any different had the full text of Amendment One been included on the ballot. *See id.* at 758. The plaintiffs have thus failed to demonstrate, even at the pleading stage, an adequate causal connection between the harm and the challenged conduct.

Nevertheless, the plaintiffs contend that the decision by the Eleventh Circuit in *Burton v. Georgia*, 953 F.2d 1266 (11th Cir. 1992), implicitly recognized the ability of voters to challenge the constitutionality of ballot language in federal courts. The plaintiffs' reliance on *Burton* is misplaced. *Burton* was not a case about standing, and the opinion did not discuss the nature of the injuries suffered by the plaintiffs. More importantly, we do not hold in this case that voters can never bring these types of suits. We hold only that these particular plaintiffs have not alleged sufficient facts to support standing. This is an important distinction, because our standing requirements ensure that a party has "'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *EKWRO*, 426 U.S. at 38 (quoting *Warth*, 422 U.S. at 498-99).

### III.

Because the plaintiffs failed to make sufficient factual allegations to support their standing to sue, we affirm the judgment of the district court.

*AFFIRMED*