41 A.3d 727

**Paul F. KENDALL, et al.**

v.

**HOWARD COUNTY.**

**No. 0235, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

April 11, 2012.

Susan B. Gray, Ellicott City, MD, for Appellant.

Louis P. Ruzzi (Margaret Ann Nolan Howard County Solicitor, on the brief), Ellicott City, MD, for Appellee.

Panel: ZARNOCH, WRIGHT, and J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

ZARNOCH, J.

In this case, a group of Howard County residents have challenged the validity of more than 100 land use actions taken by the County over the last two decades. Having been rebuffed by the federal courts, *see infra* at 3, in the Fall of 2009, appellant Paul F. Kendall and three other residents ("Kendall" or "Kendall appellants") filed a complaint against the County in the Circuit Court for Howard County seeking a declaratory judgment that various County resolutions, ordinances, zoning decisions and administrative actions violated

provisions of the County Charter. The County filed a motion to dismiss, raising procedural and jurisdictional objections to the lawsuit. After a hearing in February 2010, the circuit court granted the County's motion and dismissed the complaint. This appeal followed.

## QUESTIONS PRESENTED

Kendall has raised the following issues for our review:

1. Whether the trial court erred in holding that Appellants/Plaintiffs below had no standing to bring suit.
2. Whether the trial court erred in dismissing the case because Appellants/Plaintiffs had failed to join necessary parties.
3. Whether the trial court erred in dismissing the case because Appellants/Plaintiffs below had failed to exhaust their administrative remedies.

## FACTS AND PROCEEDINGS

In 1994, by charter initiative, citizens of Howard County placed on the ballot and won voter approval of a charter amendment, which in its present form provides:

> Any amendment, restatement or revision to the Howard County General Plan, the Howard County Zoning Regulations or Howard County Zoning Maps, other than a reclassification map amendment established under the "change and mistake" principle set out by the Maryland Court of Appeals, is declared to be a legislative act and may be passed only by the Howard County Council by original bill in accordance with the legislative procedure set forth in Section 209 of the Howard County Charter. Such an act shall be subject to executive veto and may be petitioned to referendum by the people of the county pursuant to Section 211 of the Charter.

*Howard County Charter*, § 202(g)1.

The Kendall appellants became dissatisfied with the County's compliance with the 1994 Charter Amendment. As noted in their 2009 complaint in the circuit court:

[F]or years it has been the plan, policy and practice of Howard County and its legislative and executive agencies, acting under color of state law, but in violation of the County Charter, to make legislative determinations or facilitate the making of such determinations, particularly on matters related to land use, through means other than the appropriate and required legislative process and passage of an original bill, in order to circumvent the people's right of referendum and their ability to veto or approve these decisions at the polls. In the past three years alone there have been hundreds of decisions of such nature.... Circumventing the peoples' right of referendum typically is done in one of three ways: (1) the County Council passes laws and accomplishes "legislative acts" by resolution instead of by bill; (2) the County Council, by bill, illegally delegates "legislative" decision-making to administrative entities; and (3) administrative entities, without any purported delegation, make "legislative" determinations which are required under the Charter to be accomplished by the County Council by bill.

In 2009, Kendall and other County residents, filed suit in U.S. District Court for the District of Maryland to challenge these alleged violations on federal constitutional grounds. The County defendants moved to dismiss, arguing that the plaintiffs lacked standing to pursue their action and that the court should abstain from deciding the state law issues inherent in their claims. The District Court granted the motion in part, ordering abstention so that the plaintiffs could bring their claims in State court. *Kendall v. Howard County*, 2009 WL 2358359, 2009 U.S. Dist. LEXIS 65829.

■ Taking action on two fronts, the plaintiffs in the federal suit noted an appeal and the Kendall appellants filed their declaratory judgment action in State court. Before their case was argued in this Court, the U.S. Court of Appeals for the Fourth Circuit rejected their appeal on a different basis than the district court—lack of standing. *Kendall v. Howard*

*County,* 424 Fed.Appx. 232 (4th Cir.2011). This concluded the federal litigation.[1]

In their complaint in the circuit court, the Kendall appellants indicated that each has been "a taxpayer,[2] property owner, resident and registered voter in Howard County." In Count I of the complaint, they challenged the Council's passage between 2006 and 2008 of 54 land use resolutions which should have been passed "by original bill, subject to petitioning to referendum," as well as 5 ordinances enacted between 1988 and 1994, which required certain acts to be passed by resolution. In Count II, they attacked, on a similar basis, 9 County Zoning Board adjudications, 5 Planning Board decisions and one determination of the Department of Planning and Zoning made between 2006 and 2008. Count III challenged the administrative inclusion between 2006 and 2008 of 40 properties in the Metropolitan District, a 1997 ordinance which shifted decision-making for inclusion of such properties in the District from the Council to the Director of Public Works, and a 2007 agreement regarding the sharing of septic systems. Finally, in Count IV, the Kendall appellants alleged that the inclusion of 5 Route 32 interchanges as part of the planned transportation infrastructure of the County was not enacted by original bill in order to circumvent the "electorate's right to approve or reject at the polls [these] major policy decision[s]." Among the relief requested was a declaration that all of the land use actions named in the complaint were

---

1. Under Rule 32.1(a) of the Federal Rules of Appellate Procedure, after January 1, 2007, a United States Court of Appeals may not prohibit a party from citing an unpublished opinion of a federal court for its persuasive value or any other reason. However, it is the policy of this Court in its opinions not to cite for persuasive value any unreported federal or state court opinion. In this case, our policy is not implicated because we have cited the two unreported federal case opinions only to impart the history of this case.

2. The complaint contained no allegations commonly associated with taxpayer standing, *viz.* that Kendall's taxes would increase or the County would incur substantial costs as a result of the alleged Charter violations. In fact, as discussed *infra,* the appellants have disavowed their taxpayer status as a basis for standing in this litigation.

"null and void *ab initio* and of no effect." In addition, injunctive relief was also sought.

After the County moved to dismiss and the court heard argument, the circuit judge issued the following ruling from the bench:

> I do find that there is [an] enormous standing problem in terms of the Plaintiffs' ability to demonstrate a particularized harm and that there is, therefore, no justiciable controversy.

> I also find that there are an enormous number of individuals who would be affected by any sort of declaratory relief in this case, who have not been made parties to this case, and that is a fatal flaw in this request for declaratory relief.

> I do also find that there are existing statutory remedies for all of these decisions that have been included. The fifty-five [*sic*] in count 1; the zoning decision in count 2; the public water and sewer issues in count 3; the highway interchanges in count 4, all of which have statutory remedies available to the Plaintiffs.

> They either have not been pursued or have been pursued in a truncated way that has not allowed for the issues to gravitate to the appellate court of this state. But there are statutory remedies available that make declaratory relief unnecessary.

> And I am going to grant the motion to dismiss with prejudice. This will give you another opportunity to appeal. Okay? And I encourage you to seize it. You can stop dancing, get some resolution.

## DISCUSSION

### I. Standard of Review

In review of a circuit court's grant of a motion to dismiss, we must determine whether the court was "legally correct." *Hrehorovich v. Harbor Hosp. Ctr., Inc.* 93 Md.App. 772, 785, 614 A.2d 1021 (1992). The "grant of a motion to dismiss is proper if the complaint does not disclose, on its face,

a legally sufficient cause of action." *Id.* In review of the complaint, we "presume the truth of all well-pleaded facts . . . along with any reasonable inferences derived therefrom." *Higginbotham v. PSC,* 171 Md.App. 254, 264, 909 A.2d 1087 (2006). We will affirm the dismissal if "the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Id.*

## II. Contentions of the Parties

The Kendall appellants ground their standing to sue in "the right to referendum and vote granted to the People of Howard County." That right, they say, is "personal and subsumed within . . . the associational and free speech rights attached to a referendum effort." Relying on *Bishop v. Bartlett,* 575 F.3d 419 (4th Cir.2009), and apparently its source, *FEC v. Akins,* 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998), they argue that a plaintiff's assertion of voter standing is not defeated by a contention that the voter's lawsuit involves only a "generalized grievance" shared by other citizens. In response, the County asserts that Kendall lacks "any legally protected interest sufficient to warrant the invocation of the court's power to provide declaratory relief."

On the necessary parties issue, Kendall contends:

> The notion that anyone who has or might have [an] adverse interest in the challenged actions is specious. Even if every act challenged was [overturned] by this Court, the County Council could remedy this reversal by the simple passage of a bill approving the reversed actions.

Appellants also state that dismissal was not the appropriate remedy if necessary parties are found lacking. Rather, they assert the court should have ordered such persons to be joined as parties. Kendall also argues that when "public rights" are at stake, there is no need to apply the traditional rules governing joinder. The County responds that the Kendall appellants ignore "the real-world consequences" of their requested relief, noting:

Appellants cannot ask the Court to dismantle the property interests held by the stakeholders and beneficiaries of specific land-use decisions, only to assert that an independent legislative body may attempt to 'remedy' or re-assemble these property rights later on. This notion flies in the face of equity, fairness, and due process.

Turning to the circuit court's ruling on the exhaustion of administrative remedies, Kendall argues that there is no administrative mechanism to directly challenge the facial validity of the ordinances, resolutions and some of the land use actions at issue and that the appellants do not live in close enough proximity to the affected properties to have standing to invoke an administrative remedy. *See generally Ray v. Mayor & City Council,* 203 Md.App. 15, 36 A.3d 521 (2012). The County disagrees, contending that administrative remedies did exist for the land use actions challenged in Counts II and III of the Complaint.[3]

### III. Necessary Parties / Exhaustion

With respect to the alternative grounds for the dismissal of Kendall's action, *viz.* necessary parties and exhaustion of administrative remedies, both sides in this appeal make some valid points.

In light of the gargantuan nature of Kendall's lawsuit, it is inconceivable that many property owners would not be adversely affected by judicial invalidation of land use decisions previously thought settled. It is no answer to suggest that such absent parties pick up the pieces after judicial invalidation has occurred. On the other hand, it is equally inconceivable that every single one of Kendall's land use claims requires a necessary party determination. In addition, the Court of Appeals has said that when a necessary

---

**3.** In its brief, the County asserts that Kendall's complaint should be dismissed on the basis of laches and we should not reach the challenge to one specific land use decision because it is the subject of a separate appeal by Kendall. These issues were not decided in the circuit court. Thus, we do not address them here.

party objection has been raised, "ordinarily dismissal is undesirable and that a preferable procedure is to permit an amendment joining the necessary parties." *Bender v. Secretary, Maryland Department of Personnel,* 290 Md. 345, 350, 430 A.2d 66 (1981). This is true even in a case like this one where the addition of the affected parties could make the litigation extremely unmanageable. Thus, dismissal would not be warranted solely on the basis of lack of necessary parties.[4]

This is equally true with respect to the failure to exhaust. While many of the land use decisions challenged may have triggered exhaustion concerns, it seems unlikely that each and every one of them would. Moreover, in its brief, the County argues that land use actions challenged in Counts II and III of the complaint should have been dismissed on these grounds. However, it does not contend that dismissal with respect to allegations in Counts I and IV could be sustained solely for a failure to exhaust.

## IV. Voter Standing

Although neither lack of necessary parties nor a failure to exhaust administrative remedies would support dismissal of Kendall's complaint in its entirety, the appellants face a more

---

**4.** We disagree with the contention of the Kendall appellants that they need not comply with necessary parties requirements because this litigation affects "public rights." They rely on *National Licorice Co. v. NLRB,* 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940), where the U.S. Supreme Court held that joinder of employees was not required where the National Labor Relations Board in an unfair labor practices case ordered relief against the employer. However, the "public rights" exemption to joinder rules does not apply where the absent parties would be bound by the adjudication, *Texas Utilities Co. v. Santa Fe Industries, Inc.,* 553 F.Supp. 106, 112 (N.D.Tex.1982), or the legal entitlements of the absent parties would be destroyed. *NRDC v. Kempthorne,* 539 F.Supp.2d. 1155, 1191 (E.D.Cal.2008). This is precisely the case here, where the judicial invalidation of possibly decades-old land use decisions could have a devastating impact on settled expectations regarding property rights. In addition, this is a declaratory judgment action where Maryland law requires the joinder of any person "who has or claims any interest which would be affected by the decision." Md.Code (1973, 2006 Repl.Vol.), Courts and Judicial Proceedings Article, § 3–405(a).

formidable hurdle in the County's objection to their standing to bring this declaratory judgment action. For standing purposes, the Kendall appellants have placed all their eggs in a single basket labeled referendum and voting.[5] The premises for their position are deceptively simple:

1.  Governmental injury directly related to voting, "the most basic of political rights," is a sufficient basis for standing to sue. *Akins*, 524 U.S. at 25 [118 S.Ct. 1777].[6]

2.  The fact that such an injury is "widely shared" does not deprive the courts of the ability to vindicate such rights. *Id.*

3.  Signing a referendum petition expresses the political view that a question should be considered by the whole electorate and thus implicates a First Amendment right. *Doe v. Reed* [—— U.S. ——], 130 S.Ct. 2811, 2817 [177 L.Ed.2d 493] (2010). *Cf. Green v. City of Tucson*, 340 F.3d 891, 897 (9th Cir.2003) (Signatures on a petition for incorporation of a municipality are the constitutional equivalent of votes.)

Hence, the contention that the circuit court erred in rejecting their standing for failure to demonstrate a particularized harm.

In our view, Kendall's premises cannot be accepted uncritically. First, *Akins'* holding is not as unequivocal as appellants appear to suggest. In that case, the Supreme Court concluded that a group of voters had standing to challenge a Federal Election Commission decision dismissing their complaint that a particular organization was a political committee subject to

---

**5.** Although taxpayer standing has been successfully invoked to challenge a local legislative body's decision to act by resolution rather than ordinance, *see Inlet Associates v. Assateague House Condominium Assoc.*, 313 Md. 413, 545 A.2d 1296 (1988), appellants at oral argument expressly disclaimed reliance on taxpayer standing in this case.

**6.** For a discussion of voter standing in redistricting litigation in Maryland, *see DuBois v. City of College Park*, 280 Md. 525, 528–29, 375 A.2d 1098 (1977). *DuBois* relied on federal caselaw and so do we in this case.

federal disclosure requirements. However, *Akins* distinguished the case where a voter's alleged injury is not only "widely shared," but also of "an abstract and indefinite nature," such as a concern for "obedience to law." 524 U.S. at 23–24, 118 S.Ct. 1777. *See also Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 223, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) ("The injury asserted in *Baker* [*v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) ] was . . . a concrete injury to fundamental voting rights, as distinguished from the abstract injury in nonobservance of the Constitution asserted by respondents as citizens.")

In our view, this is the essence of Kendall's claim—the County's alleged failure to comply with the 1994 Charter amendment by not enacting ordinances with respect to certain land use actions. Contrary to the authorities Kendall cites, where, generally, alleged failures in the petition process were at issue, or electoral issues were in the forefront, voting and referendum is decidedly in the background of appellants' action. In a proper case, their grievance could be litigated without any reliance on voting rights. *See e.g., Inlet Associates v. Assateague House Condominium Assoc., supra.* (Taxpayers successfully challenged a municipality's conveyance of a property interest by resolution rather than ordinance).

■ Kendall's challenge is several steps removed from an electoral / voting rights setting. This is apparent from the case upon which they place principal reliance, *Bishop v. Bartlett*, 575 F.3d 419 (4th Cir.2009). There, four North Carolina citizens challenged the process by which a State constitutional amendment was adopted. They argued that they had standing as voters to attack an allegedly misleading ballot description of the measure. *Id.* at 421–22. The U.S. Court of Appeals for the Fourth Circuit rejected the standing of voters to bring such a claim. *Id.* at 421. As an alternative basis for standing, one of the plaintiffs alleged that he had standing because the constitutional amendment would have allowed the funding of certain projects without a required referendum and he was a resident of a city in which financing bonds were

preliminarily approved without a referendum. Thus, he was deprived of the right to vote on the project. *Id.* In response, the federal appellate court said:

> While there is some question regarding whether, at the time of filing, the Roanoke Rapids project had reached *the critical point in which Moore's right to vote was implicated,* we will assume for purposes of this opinion that the project had reached a point in which the issuance of bonds was imminent.

*Id.* (Emphasis added). In essence, the Fourth Circuit held that for standing purposes, the right to vote was implicated when the referendum should have been held. In the case of a compulsory referendum, which was the type at issue in *Bishop,* the election is automatic and the right to vote is undeniably affected. However, in the case of referendum by petition, the right to vote in the election is triggered only when sufficient valid signatures are gathered to place the question on the ballot.[7] The same point was made in *Green v. City of Tucson, supra,* where the 9th Circuit went further than any court in declaring that a petition for incorporation of a municipality was the "constitutional equivalent of voting." 340 F.3d at 896. However, it went on to note:

> Like a vote on a ballot, a signature on a petition is an expression of a registered voter's will. And like an election, the petition process requires a majority for success, albeit a two-thirds majority.

*Id.* at 897. Significantly in *Green,* the incorporation petition had been signed by more than two-thirds of qualified voters, *id.* at 894, so that the requirements for a referendum had been satisfied and a right to vote in the election arose.[8]

---

**7.** Maryland law recognizes the distinction between compulsory referendum mandated by a legislative body and optional or "facultative" referendum initiated by citizen petition. *Ritchmount Partnership v. Board of Supervisors,* 283 Md. 48, 60, 388 A.2d 523 (1978).

**8.** *Green* emphasized the holding of the Supreme Court in *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 35, n. 78, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) that the constitutional right to vote is the

In this case, the Kendall appellants have not initiated the referendum process for any of the challenged land use actions. Moreover, because 1500–5000 valid signatures would have been required under Section 211 of the County Charter, they could not have guaranteed that sufficient signatures would have been gathered and an election held on any of the land use actions. In the words of *Bishop,* the "critical point" implicating the right to vote has not yet been reached. In the words of *Baker v. Carr, supra,* a "concrete injury" to fundamental voting rights has not yet occurred. What we are left with is Kendall's assertion of an abstract, generalized interest in the County's compliance with § 202(g) of the Charter. This is insufficient as a matter of law to confer voter standing on the appellants. For these reasons, the circuit court did not err in dismissing the declaratory judgment action and its decision must be affirmed.

**JUDGMENT OF THE CIRCUIT COURT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

---

right to participate in State elections on an equal basis with other qualified voters. 340 F.3d at 897. The right to vote asserted by Kendall seems to have little in common with the right described in *Rodriguez* and *Green.* The challenged actions of the County favor no voting group over another.