**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-7072**

DON MITCHELL WILBORN,

        Petitioner – Appellant,

    v.

ANDREW MANSUKHANI, Warden, FCI Estill,

        Respondent – Appellee.

**No. 17-7097**

WENDEL ROBERT WARDELL, JR.,

        Petitioner – Appellant,

    v.

ANDREW MANSUKHANI, Warden, FCI Estill,

        Respondent – Appellee.

Appeals from the United States District Court for the District of South Carolina, at Rock Hill.  David C. Norton, District Judge.  (0:16-cv-01134-DCN; 0:16-cv-01135-DCN-PJG)

Argued:  September 20, 2019             Decided:  November 8, 2019

Before AGEE, FLOYD and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Agustin Martinez, Melissa Malone, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellants. Jeffrey E. Sandberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** John J. Korzen, Ashley E. Bouchez, Third-Year Law Student, William B. Reingold, Third-Year Law Student, W. Cole Shannon, Third-Year Law Student, Appellate Advocacy Clinic, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellants. Joseph H. Hunt, Assistant Attorney General, Barbara L. Herwig, Patrick G. Nemeroff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Sherri A. Lydon, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Two federal prisoners, Don Mitchell Wilborn and W. Robert Wardell, Jr., (collectively "the Inmates") filed 28 U.S.C. § 2241 petitions asserting that several Bureau of Prison ("BOP") Program Statements are unconstitutionally vague because they define "crime of violence" in a manner substantially similar to definitions that the Supreme Court held were unconstitutionally vague in *Johnson v. United States*, 135 U.S. 2551 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). For the reasons set out below, we affirm the district court's judgment dismissing the § 2241 petitions.

## I.

## A.

Before delving into the facts and substantive law, we first address how the parties' representations during oral argument narrowed considerably what we must decide in this appeal. Specifically, in his response brief on appeal, the Warden[1] argued that the Inmates lacked standing for various factual reasons, most of which they conceded at oral argument to be true. Those representations lead us to conclude that we lack jurisdiction to consider most of the substantive claims originally raised in the § 2241 petitions.

---

[1] "[T]he proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (second alteration in original) (quoting 28 U.S.C. § 2242). At the time they filed their petitions, Wardell and Wilborn were serving their sentences at Federal Correctional Institution Estill, where Respondent Andrew Mansukhani serves as Warden.

By way of background, one component of the Court's jurisdiction is the doctrine of standing, which helps "identify those disputes which are appropriately resolved through the judicial process, and thus meet the requirements of Article III," "which limits judicial authority to 'Cases' and 'Controversies.'" *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009).[2] The constitutional component of standing requires that plaintiffs meet three requirements:

> (1) the party has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* [3]

The Inmates' § 2241 petitions challenged the constitutionality of definitions of violent crimes found in three BOP Program Statements ("PS"): PS 5110.17, which requires the BOP to notify state authorities when certain inmates are to be released from a BOP facility; PS 5162.05, which provides that certain inmates who have successfully completed a residential drug abuse treatment program may have their sentence reduced by up to a

---

[2] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

[3] Although neither the district court nor the parties addressed standing, because standing implicates our jurisdiction, "it may be raised and addressed for the first time on appeal." *Hodges v. Abraham*, 300 F.3d 432, 443 (4th Cir. 2002).

Further, we note that the magistrate judge acted sua sponte in recommending that the district court dismiss the § 2241 petitions, and the district court adopted that recommendation and entered its order dismissing suit without the Warden filing any response or making any substantive argument.

year; and PS 5100.08, which provides the BOP's policy and procedure for classifying an inmate's security level for purposes of determining where they will be housed.

Neither of the Inmates has standing to challenge the definition of "crime of violence" contained in PS 5110.17, the notification-of-release program statement. As their counsel acknowledged at oral argument, the Inmates are both currently serving sentences for offenses that are subject to the notification-of-release based on criteria unrelated to the challenged part of the definition of a "crime of violence." Specifically, Wilborn is serving a federal sentence for conspiracy to distribute and to possess with intent to distribute 50 grams or more of methamphetamine, and thus is subject to the notification requirements because he was convicted of a "drug trafficking crime, as that term is defined in [18 U.S.C. §] 924(c)(3)[.]" 18 U.S.C. § 4042(b)(3)(A); *see* BOP PS 5110.17. For his part, Wardell is serving a federal sentence for witness intimidation, and thus was determined to be subject to the notification requirements because he was convicted of a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3); 18 U.S.C. § 4042(b)(3)(B); *see* BOP PS 5110.17; *see also United States v. Allred*, No. 18-6843, slip op. at 18–20, (4th Cir. Nov. 7, 2019) (discussing why witness retaliation qualifies as a predicate conviction under the Armed Career Criminal Act's force clause). In other words, even if their vagueness challenge to the definition of "crime of violence" used in PS 5110.17 were sustained, the Inmates would still be validly subject to the notification-of-release requirements. Therefore, having suffered no injury as a result of the allegedly vague part of the definition contained in PS 5110.17, the Inmates lack standing to challenge it.

In addition, the Inmates lack standing to challenge the definition of "crime of violence" contained in PS 5162.05, early release program statement. Specifically, the BOP advised Wilborn that he is eligible to participate in the drug treatment program and, upon completion, may be eligible for early release. Therefore, the BOP has not concluded that Wilborn has a conviction for a "crime of violence" as that term is defined in PS 5162.05 such that he can demonstrate an injury causally related to the challenged language. In turn, Wardell lacks standing because he is scheduled to be released from BOP incarceration in November 2019, so he would be unable to participate in the prerequisite one-year residential drug treatment program even if the BOP determined he was eligible for early release upon completing it. He, too, cannot show an injury caused by the BOP's use of an allegedly unconstitutional definition of crime of violence that would be redressable by a favorable decision in this proceeding. Hence, the Inmates lack standing to challenge the definition used in PS 5162.05 as part of the BOP's early release determinations.

Lastly, Wardell lacks standing to challenge the definition of "history of violence" contained in PS 5100.08, the housing classification program statement. An inmate's security level plays a role in determining his place of imprisonment and in assessing his security level as the BOP assigns a "history of violence" score based on having certain past violent convictions. But when it assessed where to house Wardell, the BOP did not assign him any points for having a history of violence. Thus, because the challenged definition was not a basis for determining his placement, Wardell cannot assert an injury arising from the allegedly unconstitutional language in PS 5100.08. As such, he lacks standing to challenge it.

6

The above circumstances, which the Inmates acknowledged at oral argument, considerably altered the nature of this appeal. Significantly, no claims remain with respect to Wardell. We therefore affirm the district court's decision to dismiss his § 2241 petition. Only one argument remains as to Wilborn: whether PS 5100.08's definition for calculating an inmate's "history of violence" is unconstitutionally vague under *Johnson* and *Dimaya*.[4] We limit our discussion of the relevant facts and law to this one issue as it relates to Wilborn.

B.

One of the BOP's congressionally mandated responsibilities is to determine where inmates are housed. 18 U.S.C. § 3621; 28 C.F.R. § 524.11. While the BOP's broad authority and overarching duties are set out in statute, greater detail about that process is

---

[4] The Warden contends the Court should not consider this claim because Wilborn's § 2241 petition did not sufficiently allege an injury arising from his classification to a medium security facility and because his Opening Brief did not mention PS 5100.08 by name, nor did it specifically grapple with any of its allegedly problematic language.

However, on balance and in context, Wilborn has sufficiently raised the issue to avoid any claim of waiver. To begin, Wilborn's § 2241 petition identified PS 5100.08 and alleged it was "unconstitutionally vague and violative of due process," J.A. 17, because it contained "the same features that rendered [the Armed Career Criminal Act's] residual clause unconstitutionally vague" in *Johnson*, J.A. 27. Wilborn's argument repeatedly discussed Program Statement 5100.08 as part of his claim. *See* J.A. 27–42. And in his Opening Brief, Wilborn disputed the district court's determination that he could not "challenge [his] custody classifications via a section 2241 habeas corpus petition and that BOP program statements using 'crime of violence' definitions are unconstitutionally vague." Opening Br. 8. While the Brief did not refer to PS 5100.08, the issue of its validity—as well as the cognizability of a challenge to its phrasing in a § 2241 petition— were put before the Court. *See* Opening Br. 8–32. This is sufficient to preserve the argument for appeal. *See* Fed. R. App. P. 28(a)(8)(A) (requiring argument section of an appellant's opening brief to contain his "contentions and the reasons for them"); *see also In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014) ("Arguments raised in a trial court must be specific and in line with those raised on appeal.").

7

provided by agency regulations and Program Statements. BOP Program Statements are the internal rules and guidance adopted to describe and implement certain policies and procedures established by statute or regulation.

BOP PS 5100.08 builds on 18 U.S.C. § 3621(b)'s instruction that the BOP decides where inmates are housed. It acknowledges § 3621's direction to consider various factors, including "the nature and circumstances of the offense" and "the history and characteristics of the prisoner" when deciding where to house inmates. 18 U.S.C. § 3621(b). To implement that directive, BOP PS 5100.08 notes the BOP's goal of placing "each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the [BOP's] mission to protect society." Response Br. Add. 7.

Within the BOP, there are five security levels, and inmates are initially classified according to how many points they've received, though "[a]n inmate's security point score is not the only factor used in determining a commensurate security level for an inmate." Response Br. Add. 10. One factor relevant to both the initial point assessment and ultimate security-level determination is each inmate's history of violence, as reflected by their past convictions. BOP PS 5100.08 defines a "serious history of violence" as "[a]ggressive or intimidating behavior which is likely to cause serious bodily harm or death (e.g., aggravated assault, domestic violence, intimidation involving a weapon, incidents involving arson or explosives, rape, etc.)." Response Br. Add. 17.

8

C.

Wilborn is currently serving a 240-month sentence for conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine. He was sentenced in 2012, before the Supreme Court decided *Johnson*.

Thereafter, Wilborn filed a § 2241 petition in the U.S. District Court for the District of South Carolina[5] alleging that BOP PS 5100.08 defined history of violence in a manner that is unconstitutionally vague in light of *Johnson*. He sought an injunction barring the BOP from relying on this definition and an order requiring that he be reclassified without reliance on it.

The magistrate judge sua sponte issued a report recommending that the district court dismiss the petition after concluding that the challenge was not cognizable in a § 2241 petition "because, even if successful, it will be of no effect on the fact or duration of [Wilborn's] confinement." J.A. 58. While the magistrate judge acknowledged that PS 5100.08 "*theoretically* could affect what type of facility [he] is housed in," it observed that Wilborn did not "argue[] that his current place of confinement is unconstitutional," "request that he be transferred to a different facility," or contend that "if [Program Statement 5100.08 were] found to be unconstitutional, that it will necessarily require that he be transferred to a different facility." J.A. 58–59.

---

[5] Although Wilborn was convicted in the U.S. District Court for the Northern District of Alabama, he is confined at Federal Correctional Institution Estill, in South Carolina.

9

Although Wilborn filed objections to the magistrate judge's report, the Warden did not submit any counter-argument. Thereafter, in a brief order that did not elaborate on the magistrate judge's reasoning, the district court concluded—on de novo review—"that the magistrate judge's report accurately summarizes this case and the applicable law." J.A. 92. It adopted the report and recommendation and dismissed Wilborn's § 2241 petition.[6]

Wilborn noted a timely pro se appeal, and this Court has jurisdiction under 28 U.S.C. § 1291.

The Court appointed counsel to brief and argue the case on behalf of Wilborn, requesting that counsel address two issues: first, is § 2241 the proper vehicle for Wilborn to challenge the constitutionality of a BOP Program Statement used to determine where he will be detained? And second, is BOP Program Statement 5100.08's definition of "history of violence" unconstitutionally vague for the reasons described in *Johnson* and *Dimaya*?

II.

A.

We review de novo the district court's decision to dismiss Wilborn's § 2241 petition. *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 530 (4th Cir. 2005).

---

[6] The district court's order indicates it did not issue a certificate of appealability. But as a federal prisoner proceeding under § 2241, Wilborn did not have to obtain such a certificate before being able to appeal from the court's order. *See* 28 U.S.C. § 2253(c)(1).

B.

The Supreme Court has not definitively addressed whether a claim challenging the petitioner's place of confinement is cognizable in a petition for writ of habeas corpus, and we have considered that precise issue only in unpublished decisions.

Prisoners have "two main avenues" for challenging their incarceration: petitions for habeas corpus and civil rights claims. *Hill v. McDonough*, 547 U.S. 573, 579 (2006).[7] In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court explained why a prisoner's challenge to a state correctional division's calculation of good-conduct time was cognizable only in habeas (there, under 28 U.S.C. § 2254) and could not be brought as a civil rights action (there, under 42 U.S.C. § 1983). The Supreme Court observed that "the essence of habeas corpus" in both federal statute and common law "is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Id.* at 484. The Court explained that habeas petitions are traditionally brought to challenge "the very fact or duration of his physical imprisonment, and the relief that [the petitioner] seeks is a determination that he is entitled

---

[7] Modern habeas corpus petitions are pursued through 28 U.S.C. § 2241 (federal prisoners) and 28 U.S.C. § 2254 (state prisoners). In addition, federal prisoners are required to pursue the separate mechanism Congress provided for in 28 U.S.C. § 2255 to challenge the validity of their conviction or sentence.

"Civil rights claims" can be brought under 42 U.S.C. § 1983 or *Bivens*. *See* 42 U.S.C. § 1983 (authorizing a cause of action against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws"); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (recognizing a cause of action for damages against federal officers acting under color of federal authority when the officer violates a plaintiff's constitutional rights).

to immediate release or a speedier release from that imprisonment[.]" *Id.* at 500. In discussing the differences between habeas and civil rights cases, however, the Supreme Court observed that its holding did not mean

> that habeas corpus may not also be available to challenge . . . prison conditions. When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making custody illegal.

> But we need not in this case explore the appropriate limits of habeas corpus as an alternative remedy to a proper action under § 1983. That question is not before us. What is involved here is the extent to which § 1983 is a permissible alternative to the traditional remedy of habeas corpus. Upon that question, we hold today that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.

*Id.* at 499–500. This caveat specifically reserved the question before us—whether a claim that unquestionably falls outside the "core" of habeas can nonetheless be brought in a habeas petition.

Since *Preiser*, a circuit split has deepened on this question. Seven of the ten circuits that have addressed the issue in a published decision have concluded that claims challenging the conditions of confinement cannot be brought in a habeas petition. *Compare Nettles v. Grounds*, 830 F.3d 922, 933–34 (9th Cir. 2016) (adopting the view post-*Preiser* that conditions-of-confinement claims, which fall outside "the core of habeas corpus," must be brought in a civil rights claim rather than in a habeas petition), *Spencer v. Haynes*, 774 F.3d 467, 469–70 (8th Cir. 2014) (same), *Cardona v. Bledsoe*, 681 F.3d 533, 537 (3d Cir. 2012) (same), *Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998) (same), *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811–12 (10th Cir. 1997) (same), *Graham v. Broglin*, 922

12

F.2d 379, 381 (7th Cir. 1991) (same), *and Martin v. Overton*, 291 F.3d 710, 714 (6th Cir. 2004) (same), *with Aamer v. Obama*, 742 F.3d 1023, 1036 (D.C. Cir. 2014) (holding that prisoners can challenge the form of detention under habeas), *Jiminian v. Nash*, 245 F.3d 144, 146–47 (2d Cir. 2001) (allowing prisoners to challenge "prison disciplinary actions, prison transfers, type of detention and prison conditions" as "challenges [to] the *execution* of a federal prisoner's sentence" under § 2241), *and Miller v. United States*, 564 F.2d 103, 105 (1st Cir. 1977) (holding conditions-of-confinement claims are cognizable under § 2241).

Although we have several unpublished decisions relying on *Preiser* to hold that conditions-of-confinement claims are not cognizable in habeas proceedings, we have never addressed this issue in a published decision. *See Lee v. Winston*, 717 F.2d 888, 892 (4th Cir. 1983) ("Although there may ultimately be an area of limited substantive overlap between . . . habeas corpus and § 1983, the main thrusts of the two are obviously quite different. The former is primarily a vehicle for attack by a confined person on the legality of his custody and the traditional remedial scope of the writ has been to secure absolute release—either immediate or conditional—from that custody. Conversely, § 1983 cannot be used to seek release from illegal physical confinement[.]"); *see also Rodriguez v. Ratledge*, 715 F. App'x 261, 265–66 (4th Cir. 2017) (per curiam) (deciding conditions-of-confinement claims not cognizable in a § 2241 petition); *Braddy v. Wilson*, 580 F. App'x 172, 173 (4th Cir. 2014) (per curiam) (same). We note the observation in *Rodriguez* that "courts have generally held that a § 1983 suit or a *Bivens* action is the appropriate means of challenging conditions of confinement, whereas § 2241 petitions are not." 715 F. App'x

13

at 266. In light of this demarcation, we held in *Rodriguez* that a petitioner's challenge to his transfer to a maximum security facility "is not a cognizable § 2241 claim, because [it] challenges the conditions of his confinement, not its fact or duration." *Id.*

This case presents no basis to deviate from our previous holdings. Therefore, we conclude Wilborn's claim seeking to have the BOP reconsider where he is being housed is one that would not fall within the scope of habeas corpus. *Id.*; *see also Hill*, 547 U.S. at 579 ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus. An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983."); *Preiser*, 411 U.S. at 498 (recognizing that "the heart of habeas corpus" involves challenges to "the fact or duration of [a prisoner's] physical confinement itself, and . . . seek[] immediate release or a speedier release from that confinement").

But even if we were to conclude to the contrary, it would be of no benefit to Wilborn as his claim fails on the merits.

## C.

We recognize that the cognizability question is open to some debate among the circuit courts and that even when the Court concludes that a claim is not cognizable under § 2241, the Court can sua sponte consider the merits as a civil rights claim in some circumstances. *E.g.*, *Wilwording v. Swenson*, 404 U.S. 249, 251 (1971) (per curiam) (recognizing that courts may exercise discretion to construe a habeas petition attacking

14

conditions of confinement as a civil rights claim).[8] Assuming, but not deciding, that we could do so in this case, we note that Wilborn's claim would equally fail on its merits regardless of how the claim were pursued. *See generally Glaus v. Anderson*, 408 F.3d 382, 388–89 (7th Cir. 2005) (discussing some factors relevant to deciding whether recharacterization of a habeas petition into a civil rights claim is appropriate).

Wilborn's challenge to the language in BOP PS 5100.08 fails because this sort of internal guidance is not subject to the void-for-vagueness doctrine. In *Beckles v. United States*, 137 S. Ct. 886 (2017), the Supreme Court held that a provision of the United States Sentencing Guidelines that used language similar to the statute at issue in *Johnson* was not void for vagueness because the Guidelines were not amenable to a vagueness challenge. The Supreme Court explained: "[T]he Due Process Clause prohibits the Government from taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id.* at 892. But only two kinds of laws have been deemed void for vagueness: "laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal offenses." *Id.* The Court held that "the advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of

---

[8] In objecting to the magistrate's report and recommendation in the district court, Wilborn opposed reclassification of his claim though he did not offer any specific reasons why doing so would burden him. Instead, he returned to his argument that his claim was cognizable under § 2241 and generally referenced cases noting that there may be "serious consequences for the prisoner" when cases are so recharacterized. *E.g.*, J.A. 71–72.

the court's discretion in choosing an appropriate sentence within the statutory range," *id.*, and, consequently, are constitutionally valid.

Like the Sentencing Guidelines at issue in *Beckles*, BOP PS 5100.08 does not "define criminal offenses" or "fix the permissible sentences for criminal offenses." Therefore, it too is not susceptible to a vagueness challenge.

Before turning specifically to PS 5100.08, we first observe that the nature of BOP Program Statements generally shields them from vagueness challenge under the *Beckles* standard. This is because BOP Program Statements are "an internal agency guideline that has not been subjected to the rigors of notice and comment rulemaking." *Cunningham v. Scibana*, 259 F.3d 303, 306 (4th Cir. 2001). Decisions made under the BOP's authority under § 3621—of which PS 5100.08 is one—cannot be challenged under the Administrative Procedure Act. *See* 18 U.S.C. § 3625. BOP Program Statements *cannot* create a crime or impose a sentence; they come into play long after a conviction and sentence have been fixed, constraining only the BOP operations.

In turn, PS 5100.08 instructs how inmates are to be classified for purposes of determining "the most appropriate security level institution that also meets their program needs and is consistent with the [BOP's] mission to protect society." Response Br. Add. 7. Nothing in PS 5100.08 defines a crime or fixes a punishment—its sole purpose is to provide internal directives on how to carry out the BOP's obligation under § 3621(b) to determine where to house inmates based on a variety of statutory and additional criteria. That purpose demonstrates that PS 5100.08 is not susceptible to a vagueness challenge.

16

Based on the foregoing, however Wilborn's claim is characterized, it fails on the merits under *Beckles* because he cannot challenge the BOP Program Statement as being void for vagueness.

III.

For the reasons set out above, the judgments of the district court dismissing Wilborn and Wardell's § 2241 petitions are

*AFFIRMED*.